J-A13013-20

2020 PA Super 162

MICHAEL AND MICHELLE D'AMELIA      :      IN THE SUPERIOR COURT OF
                                   :             PENNSYLVANIA
                                   :
            v.                     :
                                   :
                                   :
                                   :
TOLL BROS., INC.,                  :
                                   :
            Appellant              :      No. 3709 EDA 2018

Appeal from the Order Entered December 6, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2018-08392

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STRASSBURGER, J.[*]

OPINION BY BENDER, P.J.E.:                        **FILED JULY 08, 2020**

Appellant, Toll Bros., Inc., appeals from the order entered on December 6, 2018, in the Court of Common Pleas of Montgomery County, confirming the March 14, 2018 arbitration award in favor of Appellees, Michael and Michelle D'Amelia.  After careful review, we affirm.

The trial court provided the following summary of relevant facts and procedural history in its Pa.R.A.P. 1925(a) opinion:

> The instant matter commenced on April 30, 2018[,][1] when … [Appellees] filed a "Petition to Confirm Award by Arbitrator" seeking to confirm an award issued in their favor against … [Appellant].  The underlying facts[,] which resulted in the instant civil action[,] began on or about November 19, 2015, after Appellees placed Appellant on notice of their claim for defective construction of their home.
>
> [1] Appellant filed its timely petition to vacate the arbitration award in the Bucks County Court of Common Pleas on April

[*] Retired Senior Judge assigned to the Superior Court.

13, 2018. Said petition was transferred to the trial court and consolidated with the above-captioned matter on September 27, 2018. The trial court admonishes Appellee[s] for their lack of candor by purposefully failing to address the pending Bucks County petition in their pleading to the trial court. Importantly, the trial court did consider Appellant's petition to vacate the award in issuing its Order.

About a year later, Appellant and … Appellee[s] entered into a written agreement (the "Repair Agreement") under which, *inter alia*, Appellant agreed to fully reclad Appellees' home.[1] The Repair Agreement contained an arbitration provision.

The Repair Agreement also provided that Appellant would reimburse Appellee[s] for the amount of reasonable attorneys' fees, expert fees and costs incurred from the date that Appellant received notice of [the] claim through the negotiation and execution of the Repair Agreement within thirty (30) days of the submission of itemized invoices documenting these costs. Appellees submitted their itemized invoices to Appellant as required to reimburse them, but Appellant failed to pay any of the legal fees.[2]

Due to Appellant's failure to reimburse Appellees' attorneys' fees and costs and material breach of the Repair Agreement, Appellees demanded binding arbitration administered by the American Arbitration Association (the "AAA") to resolve the dispute as required by the Repair Agreement. The AAA indexed the arbitration case at *Michael and Michelle D'Amelia v[.] Toll Brothers, Inc.*, … Case No. 01-17-0002-6575.

On June 12, 2017, the AAA appointed Harry Mondoil[, Esquire,] to serve as [the a]rbitrator. The notice also indicated

---

[1] Appellant also entered into similar agreements with more than 60 owners of other nearby homes built by Appellant ("the Homeowners"). Appellant's Brief at 7. Appellees, as well as the Homeowners, were represented by Horn Williamson, LLC ("Horn Williamson"). *Id.*

[2] Appellees submitted a request to Appellant for reimbursement of attorneys' fees and costs totaling $39,220.11, representing legal fees and costs incurred between September 2015 and December 2016, in addition to $6,510.00 in expert fees. *See* Appellant's Brief at 8-9, 13; Appellees' Brief at 7. Appellant determined that only $6,733.50 in attorneys' fees were reimbursable under the Repair Agreement. *Id.*

that the arbitration would be conducted pursuant to AAA's Construction Industry Arbitration Rules [("AAA Rules")] and would proceed pursuant to Fast Track procedures, which apply to two-party cases where no party's demand for damages exceeds $100,000. Under these Fast Track Procedures, the arbitration normally should not exceed one day[,] and only for good cause shown, may the arbitrator schedule additional time, which shall not exceed the equivalent of one day.

Further, formal discovery is not conducted in Fast Track cases except in "exceptional circumstances." Instead of discovery, the procedures direct that "[a]t least five business days prior to the hearing or no later than the date established by the arbitrator, the parties shall (a) exchange directly between themselves copies of all exhibits, affidavits[,] and any other information they intend to submit at the hearing, and (b) identify all witnesses they intend to call at the hearing."

Appellant requested application of AAA's Standard Track procedures, which permit discovery[,] and made requests for limited discovery in the months prior to the arbitration. Appellant's requests specified the evidence sought and explained how it was necessary to fully explore and defend against Appellees' claim for attorneys' fees, which was the central issue in the arbitration. All requests were denied.

The arbitration took place over a three[-]day period before Arbitrator … Mondoil…. The parties submitted pre[-] and post-hearing submissions, questioned witnesses[,] and entered documents into evidence. Arbitrator Mondoil entered an award in favor of Appellees in the amount of $53,305.03. In addition, Arbitrator Mondoil awarded Appellees an additional $3,213.00 to reimburse them for certain arbitration costs. The total amount awarded to Appellees was $56,518.03.

After considering the petition, all the replies and responses thereto, and the trial court's independent review of the record (including the Bucks County petition), the trial court granted Appellees' April 30, 2018 "Petition to Confirm Award by Arbitrator[ on December 6, 2018."]

Trial Court Opinion ("TCO"), 4/9/19, at 1-3 (citations to record omitted).

On December 11, 2018, Appellant filed a timely notice of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on December 31, 2018. Appellant now presents the following issues for our review:

1. Whether the trial court erred in confirming an arbitration award, where the arbitrator denied [Appellant] a fair hearing by refusing to consider evidence of [Appellees'] counsel's dramatic overbilling, which was central to the arbitrator's decision on the reasonableness of fees claimed, the sole claim submitted for decision[?]

2. Whether the trial court erred in confirming the arbitration award, where the arbitrator denied [Appellant] a fair hearing by refusing limited discovery that would have permitted [Appellant] to present a full defense against the claim for attorneys' fees[?]

3. Whether the trial court erred in confirming the arbitration award, despite the irregularity causing the rendition of an unjust and inequitable award, where the arbitrator abused his power by deciding a claim that was not pending before him[?]

Appellant's Brief at 5 (unnecessary capitalization omitted).

Preliminarily, we note that the arbitration in this case is a matter of common law arbitration, because paragraph 9 of the Repair Agreement provides that disputes arising under the agreement "shall be resolved by binding arbitration administered by the [AAA]…." *See* Appellees' Petition to Confirm Arbitration Award, Exhibit A at 3 ¶ 9; 42 Pa.C.S. § 7302(a); ***Runewicz v. Keystone Ins. Co.***, 383 A.2d 191 (Pa. 1978) (stating that an arbitration clause providing for arbitration pursuant to AAA rules and indicating that the parties are bound by the arbitration decision denotes common law arbitration).

- 4 -

Our standard of review of common law arbitration is very limited:

> The award of an arbitrator in a nonjudicial arbitration which is not subject to statutory arbitration or to a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.
>
> **Sage v. Greenspan**, 765 A.2d 1139, 1142 (Pa. Super. 2000) (citation omitted)[3].  "The arbitrators are the final judges of both law and fact, and an arbitration award is not subject to reversal for a mistake of either."  **F.J. Busse Co. v. Sheila Zipporah, L.P.**, 879 A.2d 809, 811 (Pa. Super. 2005) (citation omitted).  "[A] trial court order confirming a common law arbitration award will be reversed only for an abuse of discretion or an error of law."  **Prudential Prop. & Cas. Ins. Co. v. Stein**, … 683 A.2d 683, 685 ([Pa. Super.]  1996) (citation omitted).

**U.S. Claims, Inc. v. Dougherty**, 914 A.2d 874, 876-77 (Pa. Super. 2006) (internal brackets omitted).  Moreover, the appellant "bears the burden to establish both the underlying irregularity and the resulting inequity by 'clear, precise and indubitable evidence.'  In this context, irregularity refers to the process employed in reaching the result of the arbitration, not the result itself."  **Gargano v. Terminix Intern. Co., L.P.**, 784 A.2d 188, 193 (Pa. Super. 2001) (internal citation omitted).

Here, Appellant claims that the trial court erred in refusing to vacate the arbitration award, because the arbitrator's "failure to consider key evidence on the central issue in the case deprived [Appellant] of a full and fair hearing."  Appellant's Brief at 29.  This "key evidence" is a compilation of invoices issued

---

[3] **See** 42 Pa.C.S. § 7341.

by Horn Williamson to Appellees and the other Homeowners, which Appellant avers reveals the "dramatic overbilling" practices of Horn Williamson and demonstrates that Horn Williamson overbilled Appellees. **Id.** at 22 (citing **Andrew v. CUNA Brokerage Servs.**, 976 A.2d 496, 502 (Pa. Super. 2009) ("The failure of arbitrators to consider material evidence constitutes the denial of a full and fair hearing.")).

Explaining its denial of Appellant's request for relief, the trial court stated: "The trial court may not reconsider evidence and testimony that the arbitrator already considered in entering his award and rulings that were made within the scope of his authority." TCO at 6. Appellant avers that the trial court's holding constitutes an error of law, as it embodies a mischaracterization of Appellant's argument. Appellant asserts that it never argued that the trial court should "reconsider evidence and testimony that the arbitrator *already considered*[,]" but that the arbitrator "*never considered* evidence that was crucial to the issue being arbitrated[.]" Appellant's Brief at 25 (emphasis in original). We deem Appellant's claim to be meritless.[4]

Appellant attempted to admit into evidence at the arbitration hearing the voluminous billing records it compiled regarding Horn Williamson's legal

---

[4] "This Court is not bound by the rationale of the trial court, and we may affirm the trial court on any basis." **Commonwealth v. Williams**, 73 A.3d 609, 620 n.4 (Pa. Super. 2013).

fees charged to Appellees and the other Homeowners.[5] *Id.* at 17. Appellees objected to the use of Exhibit 8 during the arbitration proceeding on the ground that the invoices "related to legal services performed for over 60 other families that are not a part of this matter … and … have no relevance to this matter." N.T. Arbitration, 1/9/18, at 11-12. In response, Appellant argued that "[t]he nature of the billings [to the other Homeowners] and the processes utilized in those billings is central to this dispute." *Id.* at 12. Appellant explained:

> The fee claims asserted by [Appellees] were part of approximately 66 additional homeowners that were all submitted at the same time. These all relate to services that Horn Williamson performed during a period from … October through December of 2016.

> When you look at those invoices in the aggregate, there is a pattern displayed of billing practices that cannot be justified. As a consequence, [the invoices] are entirely relevant to the [Appellees'] dispute, because they are relevant to the billing practices related to Horn Williamson.

*Id.* at 12-13.

Arbitrator Mondoil initially delayed ruling on the relevance of Exhibit 8 and allowed Appellant to utilize the documents during the proceeding. *See Id.* at 38-39 (Arbitrator Mondoil stated: "In terms of whether [Exhibit 8 is] relevant or material, we'll wait until [Appellant's counsel] actually uses the documents and see to what purpose he intends to use them and is, in fact,

---

[5] Appellant identified the compilation of billing records from Horn Williamson as "Exhibit R-8" at arbitration. These invoices were subsequently submitted as "Exhibit EE" before the trial court and constitute Volume III of the Reproduced Record herein. *See* R.R. 1390a-2500a ("Exhibit 8").

using them…. So[,] we'll deal with that evidence when it's used."). Accordingly, Appellant referred to the invoices contained in Exhibit 8 during its extensive cross-examination of Jennifer M. Horn, Esquire, one of the owners and founders of Horn Williamson. *See* N.T. Arbitration, 2/14/18, at 628-811.

Appellant's claim that the attorneys' fees regarding the services provided by Horn Williamson to Appellees are unreasonable relies heavily on its assertion that certain timekeepers billed more than 24 hours in a single day and 90 hours in a five-day period. Appellant's counsel insisted that it was necessary to view the invoices in the aggregate, "to see how [Horn Williamson's] timekeepers overbilled all Homeowners, including [Appellees,] by breaking down billing into small pieces and attributing them to each Homeowner, such that the aggregate would be exorbitant for the tasks performed, and sometimes exceeded 24 hours in a day for a single timekeeper." Appellant's Brief at 18. Appellant questioned Ms. Horn exhaustively regarding Horn Williamson's billing practices and the reasonableness of the firm's legal fees. *See* N.T. Arbitration, 2/14/18, at 628-811. Arbitrator Mondoil ultimately precluded the invoices of the other Homeowners because, "[w]e're only adjudicating whether the bills to [Appellees] were reasonable…. [Appellees'] objection is sustained." *Id.* at 704-05.

In response to Appellant's accusations regarding Horn Williamsnon's billing practices, Appellees explained that "[e]ach [H]omeowner had the

opportunity to have their home remediated and could recover attorneys' fees by presenting [Appellant] with bills for legal services. [Appellant] insisted on complete confidentiality, meaning that the [H]omeowners could not know the terms of any other [H]omeowner's settlement," and Horn Williamson could not contact the families in groups. Appellees' Brief at 16-17. As a result, Horn Williamson "had to engage in negotiations with each family over issues that were repeated again and again." *Id.* at 18 (citation to record omitted). Additionally, Appellant imposed several deadlines on Appellees and the Homeowners, which if not met, would result in withdrawal of the settlement offers. *Id.*

Appellees argue that there were three "deadline dates," *i.e.*, October 25, 2016, October 28, 2016, and November 4, 2016, by which Horn Williamson had to

> communicate with dozens of [H]omeowners, one at a time, in a condensed time frame, using an "all hands on deck" approach to try to meet [Appellant's] draconian terms. It was the billing for those days that was the focus of [Appellant's] "dramatic overbilling" scrutiny.
>
> On those "deadline dates[,]" dozens of settlements were finalized, so consequently, Horn Williamson sent billing records for the settlements within the required … deadline.
>
> During the [a]rbitration, [Appellant's] attorneys presented all of the [H]omeowners' bills to [Ms.] Horn … for identification and authentication.
>
> …
>
> Once the bills were authenticated, [Appellant] used all of those bills to cross-examine [Ms.] Horn regarding the number of hours that were billed on the "deadline dates."

On certain dates, Appellees' counsel had to communicate with dozens of [H]omeowners, one at a time, throughout the same day, because of the confidentiality requirement and deadlines imposed by [Appellant].

*Id.* at 18-20 (citations to record omitted).

The record reflects an extensive cross-examination of Ms. Horn by Appellant's counsel, during which Ms. Horn was questioned at length regarding her firm's billing practices.[6]  For instance:

Q.  Do you believe it's possible for a timekeeper to bill more than 24 hours in a 24-hour period?

A. Firm Central[7] only allows billing in tenths of an hour, or .1 increments.

If I spend three minutes on a matter, that's a .1.  If I spend four minutes on a matter that's providing value for a family, that's .1.

If you bill a .1 for 71 families already, that totals seven hours.  So where we looked at the day where we saw dinner receipts at 11:30 at night in Garnet Valley and things like that and we saw hundreds of e-mails in a day, Wendy Klein Keane e-mailing at 5:30 in the morning – even though the families knew the hours were absurd, even though we knew that there was a piece of paper to substantiate everything that had been done, because [Appellant] was raising the issue and using that as an excuse to hold up payment for over 63 families, we decided that proactively we would simply – even though we saw the work was done.  The value was given.  We were billing in direction in accordance with the agreement – we chose to write off time for those days in the hopes that [Appellant] would be able to move on from this.

N.T. Arbitration, 2/14/18, at 698-99.

_____

[6] *See* N.T. Arbitration, 2/14/18, at 628-811.

[7] Firm Central is the billing system that was utilized by Horn Williamson for preparing invoices at the time the fees at issue in this matter were incurred. *See* N.T. Arbitration, 2/14/18, at 526.

Appellant further questioned Ms. Horn about the billing of certain timekeepers on specific dates, *e.g.*:

Q. Are you aware that Sarah Hopkins billed 27 hours in a single 24-hour period?

A. What day are you referring to…?

Q. I'm referring to November 3rd, 2016.

A. November 3rd, 2016 was the day before [Appellant] was threatening to pull offers for over 60 families. And I know Ms. Hopkins worked through the night for a long duration, revising agreements to include certain provisions that had been negotiated. So I do know that there was a long duration of work performed on that evening. I think it was over a period of two days.

…

Q. Are you aware that on a separate occasion, Sarah Hopkins billed 25.1 hours in a single day?… The date where she billed 25.1 hours was October 27, 2016.

…

A. That makes sense. That was [the] eve of an October 28th [deadline] date.

I know that we've made adjustments for all families for that November 3rd, November 4th day and also October 28th….

Q. Are you aware that Katherine Seligman billed 26.4 hours on a single day on November 3rd, 2016?

…

I think I've already testified that I know that November 3rd was a very difficult day in which the entire team worked an extensive period of time.

*Id.* at 791-94.

Based on the foregoing excerpts of Appellant's cross-examination and our review of the record, we deem Appellant's averment that Arbitrator Mondoil failed to allow it to reference the invoices of the other Homeowners

- 11 -

to be a clear misrepresentation. *See* Appellant's Brief at 27. Moreover, the record refutes Appellant's allegation that the arbitrator failed to consider evidence of Horn Williamson's overbilling. The arbitrator was present for, and had the opportunity to consider, Appellant's extensive cross-examination of Ms. Horn, in addition to its direct-examination of Sandra Hadley, Appellant's expert witness in the field of forensic accounting and fraud examination. *See* N.T. Arbitration, 2/15/18, at 826-973. It was within the province of the arbitrator to accept or reject the records. *See* AAA Rule 35(b).[8] Thus, we discern no abuse of discretion or error of law in the trial court's refusal to vacate the arbitration award on these grounds.

Next, Appellant claims that the trial court erred in denying its request to vacate the arbitration award, as "the [a]rbitrator denied proper, limited discovery that was essential for [Appellant] to defend itself[.]" Appellant's Brief at 21. Appellant requested application of AAA's Standard Track procedures in this matter specifically because they permit discovery, and

_____

[8] Rule 35 of the AAA Construction Industry Arbitration Rules provides, in relevant part:

> The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered. The arbitrator may request offers of proof and may reject evidence deemed by the arbitrator to be cumulative, unreliable, unnecessary, or of slight value compared to the time and expense involved. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where: 1) any of the parties is absent, in default, or has waived the right to be present, or 2) the parties and the arbitrators agree otherwise.

AAA R-35(b).

Appellant was seeking limited discovery regarding documentation to support Appellees' demands for legal fees. Appellant complains that the arbitrator rejected its request for discovery on the basis that this was a "Fast Track" arbitration; however, "the arbitration spanned three days, in violation of AAA Fast Track Procedure F-11…." *Id.* at 31. Appellant maintains that, "[a]s a result of this inconsistent and inequitable application of the Fast Track Procedures, [Appellant] was deprived of a full and fair hearing at which it could marshal appropriate evidence to demonstrate more clearly that [Horn Williamson's] bills were manifestly excessive and unreasonable, the sole question in the arbitration." *Id.*

In response to Appellant's argument that the arbitrator improperly failed to permit limited discovery, the trial court stated:

> Appellant … ultimately agreed to have the arbitration administered under the Fast Track Rules. Under said rules, formal discovery is not conducted, except in "exceptional circumstances." Apparently, the arbitrator did not find the underlying circumstances exceptional as he did not permit discovery. The trial court did not find that the arbitrator's adherence to the rules limiting discovery an irregularity that justifies vacating or modification of the award.

TCO at 6. Moreover, the trial court opined:

> An "irregularity refers to the process employed in reaching the result of the arbitration, not the result itself." *Gargano*…, 784 A.2d [at] 193…. "A cognizable irregularity may appear in the conduct of either the arbitrators or the parties." *Paugh v. Nationwide Ins. Co.*, 420 A.2d 452, 458 (Pa. Super. 1980)….
>
> Very recently, the Superior Court adeptly articulated certain irregularities that warrant modification and those which do not:

For example, this Court has found irregularities rising to the level of the denial of a fair hearing where the arbitrators: exceeded the scope of the arbitration agreement, *Ginther v. U.S. Fid. & Guar. Co.*, 632 A.2d 333, 335 (Pa. Super. 1993); made an award for claims that were never raised, *Mellon v. Travelers Inc. Co.*, 406 A.2d 759, 762 (Pa. Super. 1979), or for claims that were not raised against the party against whom they were awarded, *Alaia v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 928 A.2d 273, 277 (Pa. Super. 2007); and had an undisclosed, ongoing business relationship with one of the parties, *James D. Morrisey, Inc. v. Gross Const. Co.*, 443 A.2d 344, 349 (Pa. Super. 1982).

However, this Court has held that no irregularity warranting modification occurred where the allegations were that the arbitrators: applied the wrong state's law, *Racicot v. Erie Ins. Exch.*, 837 A.2d 496, 500 (Pa. Super. 2003); failed to award fees as provided by a relevant statute, *F.J. Busse Co. v. Sheila Zipporah, L.P.*, 879 A.2d 809, 812 (Pa. Super. 2005); made an award contrary to a policy exclusion, *Hain v. Keystone Ins. Co.*, 326 A.2d 526, 528 (Pa. Super. 1974); and made an incorrect determination whether a person was an insured under a contract. *Prudential Prop. & Cas. Ins. Co.* …, 683 A.2d [at] 684….

In sum, "only claims which assert some impropriety in the arbitration process may be the subject [of] an appeal—to the exclusion of appeals which seek review of the merits." *Snyder v. Cress*, 791 A.2d 1198, 1201 (Pa. Super. 2002). "[N]either we nor the trial court may retry the issues addressed in an arbitration proceeding or review the tribunal's disposition of the merits of the case." *F.J. Busse Co.*, 879 A.2d at 811.

*Prince L. Offices, P.C. v. McCausland Keen & Buckman*, … 2017 WL 6418880 at *2-3 (Pa. Super. Dec. 18, 2017).[9]

---

[9] We recognize that the trial court's citation to an unpublished Superior Court memorandum violates Superior Court Internal Operating Procedure 65.37, which prohibits citation to unpublished memorandum decisions filed prior to May 1, 2019. However, the portion of the decision in *Prince L. Offices, P.C.*, which the trial court relied on, is merely a summary of the findings in published

Instantly, Appellant fails to offer clear, precise, and indubitable evidence that the arbitrator's ruling and actions caused the rendition of an unjust, inequitable or unconscionable award. As such, the trial court neither erred nor abused its discretion when it confirmed and refused to vacate the arbitration award.

TCO at 5-6.

Regarding Appellant's argument that the arbitration spanned three days in violation of AAA Fast Track Procedure F-11, the trial court found:

The hearing was held over a period of three days covering 18.7 hours. A winter storm delayed the first day of arbitration, shifting the schedule and resulting in a delayed start the first day. The total duration of the arbitration was the equivalent of two 9.35 hour days[,] which complies with AAA Rule F-11. Again, the trial court did not find that this constituted an irregularity that justifies vacating or modification of the award.

*Id.* We discern no abuse of discretion or error of law in the trial court's denial of Appellant's request for discovery. Appellant is not entitled to relief on this claim.

Lastly, Appellant avers that the arbitrator's decision on a claim not pending before him constituted an irregularity "that caused the rendition of an unjust and inequitable award." Appellant's Brief at 21. We recognize that "as the arbitrator's authority is restricted to the powers the parties have granted [him] in the arbitration agreement, we may examine whether the common law arbitrator exceeded the scope of his authority." *See Gargano*, 784 A.2d at 193.

---

opinions of this Court. It is well-settled that this Court may affirm the decision of the trial court if it is correct on any grounds*. See Williams*, *supra*.

- 15 -

Contrary to Appellant's assertion that the issue of fees and costs related to the arbitration proceeding was not pending before the arbitrator, the trial court found:

> In response to Appellees' demand for arbitration, Appellant filed an Answering Statement wherein it demanded attorneys' fees. AAA Rule 48(b) grants the arbitrator the authority to award attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement. As such, the arbitrator was authorized to award Appellees attorneys' fees incurred at the arbitration hearing.

TCO at 6-7 (citations to record omitted).

Appellant argues that the trial court erred in its finding, as none of the factors enumerated in AAA Rule 48(b) for granting an arbitrator the authority to award attorneys' fees exist in this case.[10] Appellant's Brief at 35. Most significantly, while Appellant admits that it did initially assert a counterclaim in the arbitration in which it requested fees, it asserts that the counterclaim was withdrawn and, thus, only Appellees had a pending claim for attorneys' fees. *Id.* at 36.

To the contrary, the record reflects that both parties had pending requests for attorneys' fees in connection with the arbitration proceeding. Appellant's Answering Statement, which included a cross-claim and a counterclaim, included the following prayer for relief: "Wherefore, Respondent requests that the demand be dismissed and an award be entered

---

[10] Rule 48 provides that the arbitrator may include "an award of attorneys' fees *if all parties have requested such an award or it is authorized by law or their arbitration agreement*." AAA Rule-48(d)(ii) (emphasis added).

in Respondent's favor for the recovery of its compensatory damages as [*sic*] forth herein, together with its *legal fees and costs of defense* and such other and further relief as deemed appropriate." Appellant's Answering Statement, 6/29/17, at 15 (emphasis in original; unnecessary capitalization omitted). Appellant did subsequently withdraw its counterclaim; however, its answering statement was never withdrawn or amended to remove the demand for attorneys' fees. Given that both parties requested attorneys' fees in connection with the arbitration proceeding, we discern that the arbitrator had the authority to award such fees. Thus, the trial court properly refused to vacate the award of attorneys' fees incurred in the arbitration.

Accordingly, we affirm the trial court's December 6, 2018 order confirming the arbitration award in favor of Appellees.

Order affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

*Date:* 7/8/2020

- 17 -