J-A12020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| JACKS AUTO PARTS SALES, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MJ AUTO BODY AND REPAIR, LLC | : | |
| AND MARK RITALDATO | : | |
| | : | |
| | : | No. 1946 EDA 2022 |
| | : | |
| APPEAL OF: AMAZON.COM | : | |
| SERVICES, INC., AMAZON FLEX, | : | |
| AMAZON.COM DEDC LLC, AMAZON, | : | |
| AMAZON CORPORATION, AMAZON | : | |
| FULFILLMENT SERVICES INC., | : | |
| AMAZON LOGISTICS, INC., AMAZON | : | |
| SERVICES LLC AND AMAZON INC. | : | |

Appeal from the Order Entered July 27, 2022
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 211101194

BEFORE: OLSON, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.: **FILED SEPTEMBER 25, 2023**

Appellants Amazon.com Services, Inc., Amazon Flex, Amazon.com DEDC LLC, Amazon, Amazon Corporation, Amazon Fulfillment Services Inc., Amazon Logistics, Inc., Amazon Services LLC, and Amazon Inc. (collectively, Appellants) appeal from the order denying their petition to open a default judgment entered against Appellants in favor of Appellee Jacks Auto Parts Sales, Inc. (Jacks) in the amount of $42,621.49. We affirm.

The trial court summarized the relevant facts and procedural history of this matter as follows:

Jacks . . . initiated this landlord/tenant action in the Philadelphia Municipal Court in August 2021.[1] On September 16, 2021, Jacks obtained a default judgment in the amount of $31,812.82 against Defendants MJ Auto Body & Repair, LLC and Mark Ritaldato. On November 15, 2021, Jacks transferred the default judgment to the Court of Common Pleas and filed writs of execution against numerous Amazon entities. The specific Amazon entities named are as follows: Amazon, Amazon Corporation, Amazon Fulfillment Services, Inc., Amazon Logistics, Inc., Amazon Services, LLC, Amazon, Inc., Amazon, LLC, Amazon.com Services, Inc., Amazon Flex, and Amazon.com DEDC, LLC (collectively [Appellants]). Jacks, via the Sheriff, served [Appellants] at 2400 Weccacoe Avenue upon James Russo, who was identified in the Sheriff's Affidavit/Return of Service as the person in charge. Jacks later served interrogatories in aid of execution upon all the same entities.

_____

[1] The trial court did not discuss how the underlying landlord tenant case involved Appellants, other than as garnishees on the writ of execution. Appellants maintain that they were named as garnishees solely based on a claim that a truck bearing the Amazon logo was observed at MJ Auto Body & Repair. **See** Pet. to Open, 4/25/22, at ¶25; Appellants' Brief at 6. Further, on this record, it is difficult to discern what occurred in the original matter between Jacks and defendants MJ Auto Body & Repair, LLC and Mark Ritaldato and the relationship that Appellants may have had with MJ Auto Body & Repair, LLC and Mark Ritaldato, if any. In its opinion, the trial court described the action between Jacks and MJ Auto Body & Repair, LLC and Mark Ritaldato as a landlord/tenant action. **See** Trial Ct. Op., 9/23/22, at 2. Moreover, upon review of the trial court record and the judgment entered in favor of Jacks and against MJ Auto Body & Repair, LLC and Mark Ritaldato, including the docket entries attached to that judgment, which is included in the certified record, the landlord/tenant action involved outstanding rent and utility payments owed by MJ Auto Body & Repair, LLC and Mark Ritaldato to Jacks. **See** Trial Ct. Op., 9/23/22, at 2; **see also** Judgment (against MJ Auto Body & Repair, LLC and Mark Ritaldato), 11/15/21. It appears from the certified record that Appellants were named as garnishees in the action for the first time in the writ of execution and interrogatories that Jacks filed and served on James Russo, a warehouse manager of an Amazon facility on Weccacoe Avenue. The interrogatories inquired, *inter alia*, whether Appellants had any business relationship, owed any outstanding debts, or had any financial obligation to MJ Auto Body & Repair, LLC and Mark Ritaldato, to which Appellants did not respond. **See** Interrogs., 11/23/21, at ¶¶1-14.

When [Appellants] did not respond to the interrogatories, Jacks obtained a default judgment against [Appellants] on December 21, 2021 pursuant to Pa.R.Civ.P. 3146. Thereafter, Jacks filed a motion for an assessment of damages hearing. No one appeared at the assessment of damages hearing on behalf of [Appellants], and, on February 16, 2022, this court entered an order assessing damages in favor of Jacks and against [Appellants] in the amount of $42,621,49. On April 25, 2022, [Appellants], through counsel, filed the petition to open and/or strike the default judgment, and [Appellants] also filed an emergency motion to stay the writ of execution. This court granted the emergency motion and stayed further execution until resolution of the petition to open and/or strike.

At the oral argument, [Appellants' counsel] conceded that the default judgment and the entry of the default judgment complied with all of the applicable rules. Stated another way, while [Appellants] did not specifically waive [their] argument that the default judgment should be stricken, [Appellants] essentially conceded Jacks had properly entered the default judgment. [Appellants] then proceeded with its argument that the court should open the default judgment, based on improper service and that [Appellants] had complied with the three-part equitable test for opening default judgments.

With respect to service, [Appellants] did not dispute that an Amazon entity operated out of a facility at 2400 Weccacoe Avenue. [Appellants] did not dispute that James Russo worked for an Amazon entity at 2400 Weccacoe Avenue, although [Appellants] did not concede that Mr. Russo worked for one of the named Amazon garnishees[/Appellants]. Amazon did not dispute that Mr. Russo was a manager at 2400 Weccacoe Avenue. [Appellants] did not dispute that Mr. Russo received service of the interrogatories at 2400 Weccacoe Avenue. It is unclear what Mr. Russo did with the interrogatories when he received them, and it is unclear what happened with all of the other legal papers Jacks served on the Amazon entities at 2400 Weccacoe Avenue.

Following the hearing, this court determined Jacks had properly served [Appellants] at a regular place of business upon a manager and/or a person then in charge. The court further concluded, upon balancing the equities, that [Appellants] failed to satisfy the three-part test for opening a default judgment. Thus, this court denied the petition.

Trial Ct. Op., 9/23/22, at 2-4 (some formatting altered). Appellants filed a timely appeal, and both the trial court and Appellants complied with Pa.R.A.P. 1925.

Appellants raises the following issues on appeal:

1. Did the [trial court] err in denying [Appellants' petition] to open the default judgment, where it lacked jurisdiction to enter that judgment because [Appellants] had never been served with the underlying writs of execution?

2. Did the [trial court] abuse its discretion in denying [Appellants' petition] to open the default judgment, where [Appellants] timely sought relief, have a complete defense to the underlying claim, and explained the reasonable cause for its lack of objection in advance of having the default judgment entered against them?

Appellants' Brief at 5.

Our standard of review regarding the denial of a petition to open a default judgment is as follows:

It is well settled that a petition to open a default judgment is an appeal to the equitable powers of the court, and absent an error of law or a clear, manifest abuse of discretion, it will not be disturbed on appeal. An abuse of discretion occurs when a trial court, in reaching its conclusions, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will.

To succeed on a petition to open a default judgment, a moving party must show: (1) the petition to open or strike was promptly filed; (2) the default can be reasonably explained or excused; and (3) there is a meritorious defense to the underlying claim. Also, as a petition to open a default judgment is an appeal to the equitable powers of the court, where the equities warrant opening a default judgment, this Court will not hesitate to find an abuse of discretion.

- 4 -

***ABG Promotions v. Parkway Pub., Inc.***, 834 A.2d 613, 615-16 (Pa. Super. 2003) (*en banc*) (citations omitted and formatting altered).  Further, the party petitioning to open a judgment bears the burden of establishing such relief. ***See id***.

> Additionally, this Court has explained:
>
> [A] court is also to balance the equities when considering whether to grant a petition to open a default judgment.  This Court has recognized that where some showing has been made with regard to each part of the test, a court should not blinder itself and examine each part as though it were a watertight compartment.  A court should, instead, consider each part in light of all the circumstances and equities of the case.  Where the equities weigh strongly in favor of granting the petition to open, this Court will find an abuse of discretion in denying such a petition.

***Id.*** at 618 (citations omitted and formatting altered).[2]

---

[2] As the trial court noted, Appellants filed a petition to "open and/or strike" the default judgment.  Trial Ct. Op., 9/23/22, at 5.  However, the trial court further explained that at oral argument concerning Appellants' petition, Appellants conceded that there was no fatal defect on the face of the record, and therefore, Appellants had no basis upon which to assert that the trial court should strike the default judgment.  ***See id.***; ***see also Williams v. Wade***, 704 A.2d 132, 134 (Pa. Super. 1997) (citation omitted) ("[a] petition to strike a judgment operates as a demurrer to the record [and] may be granted only where a fatal defect in the judgment appears on the face of the record").  On this record, we agree with the trial court's conclusion that Appellants argued facts outside of the record which included information from the Pennsylvania Department of State website and Pennsylvania business entity numbers, therefore, the petition was not a petition to strike or demurrer to the record, and that the trial court properly considered the filing as a petition to open the default judgment.  ***See*** N.T., 7/21/22, at 16.  Moreover, in its issues presented on appeal, Appellants contend that the trial court did not have personal jurisdiction over it because of improper service, and that the trial court did not have the power to enter the default judgment against Appellants.  Alternatively, Appellants argue that the judgment should be opened because

*(Footnote Continued Next Page)*

"However, where the party seeking to open a judgment asserts that service was improper, a court must address this issue first before considering any other factors." *Cintas Corp. v. Lee's Cleaning Services, Inc.*, 700 A.2d 915, 916 (Pa. 1997) (citations omitted); *see also Century Sur. Co. v. Essington Auto Center, LLC*, 140 A.3d 46, 53-54 (Pa. Super. 2016) (reiterating that "we need not [] engage in the [three-factor] analysis if the party seeking to open the judgment has not received valid service or notice of the proceedings" (citations omitted)). "If valid service has not been made, then the judgment should be opened because the court has no jurisdiction over the [party] and is without power to enter a judgment . . . ." *Cintas Corp.*, 700 A.2d at 916 (citation omitted). "In making this determination, a court can consider facts not before it at the time the judgment was entered." *Id.* (citations omitted).

Garnishment actions are defined as follows:

Garnishment is a proceeding wherein the judgment creditor seeks to determine whether the garnishee owes a debt to the judgment debtor, or has property of the judgment debtor in his possession. The garnishment proceedings starts with service upon the garnishee of a writ of execution and interrogatories. The object

_____

Appellants have a complete defense to the claim; acted promptly to seek the reopening of the judgment; and that the default resulted from the warehouse manager's mistaken belief that the papers he received were courtesy copies. *See* Appellants' Brief at 2-5. We note that Appellants' allegation that service was improper can also provide a basis upon which to open the judgment. *See Deer Park Lumber, Inc. v. Major*, 559 A.2d 941, 943 n.1 (Pa. Super. 1989) (citing *U.S. Dept. of Housing v. Dickerson*, 516 A.2d 749 (Pa. Super. 1986); *Liquid Carbonic Corp. v. Cooper & Reese*, 416 A.2d 549 (Pa. Super. 1979)).

of the interrogatories is to determine whether the suspected debt exists. The judgment previously obtained by the judgment creditor works an equitable assignment of the debt owed to the judgment debtor to the extent necessary to satisfy the judgment; and, the judgment creditor stands in the same position *vis a vis* the garnishee as would the judgment debtor. After garnishment, the only obligations upon the garnishee are to answer the interrogatories and to notify the judgment debtor, by registered or certified mail at his last known address, of the impending garnishment proceedings.

***Wheatcroft v. Smith***, 362 A.2d 416, 419 (Pa. Super. 1976) (footnotes omitted). "Garnishment is a remedy created to enable a judgment creditor to reach assets of [its] debtor held by a stranger and is the means by which a creditor collects his debt out of property of the debtor in the hands of a third party." ***Brown v. Candelora***, 708 A.2d 104, 107 (Pa. Super. 1998) (citations and quotation marks omitted). Further,

[a]ny person may be a garnishee and shall be deemed to have possession of property of the defendant if the person

(1) owes a debt to the defendant;

(2) has property of the defendant in his or her custody, possession or control[.]

Pa.R.Civ.P. 3101(b)(1)-(2). Execution shall be commenced by filing a praecipe for a writ of execution. Pa.R.Civ.P. 3103(a). Service of the writ upon the garnishee shall attach all property of the defendant which may be attached. Pa.R.Civ.P. 3111(b).

The Pennsylvania Rules of Civil Procedure provides as follows concerning service of interrogatories on a garnishee:

(a) The procedure between the plaintiff and the garnishee shall, as far as practicable, be the same as though the interrogatories

- 7 -

were a complaint and the answer of the garnishee were an answer in a civil action.

(b) The garnishee in the answer under "new matter" may include

(1) the defenses of the immunity or exemption of property;

(2) any defense or counterclaim which the garnishee could assert against the defendant if sued by the defendant but the garnishee may not assert any defense on behalf of the defendant against the plaintiff or otherwise attack the validity of the attachment;

Note: Objections to the attachment, other than the defenses of immunity or exemption, must be raised preliminarily. **See** Rule 3142.

(3) any claim which the garnishee could assert against the plaintiff if sued by the plaintiff.

Pa.R.Civ.P. 3145.

Further, the Rules provide:

Service of original process upon a corporation or similar entity shall be made by handing a copy to any of the following persons provided the person served is not a plaintiff in the action:

(1) an executive officer, partner or trustee of the corporation or similar entity, or

(2) the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity, or

(3) an agent authorized by the corporation or similar entity in writing to receive service of process for it.

Pa.R.Civ.P. 424. "In the context of an attachment proceeding, interrogatories are analogous to a complaint and are designed to ascertain the property in the possession of a garnishee." **Jones v. McGreevy**, 270 A.3d 1, 7 n.5 (Pa. Super. 2022) (citations omitted), *appeal denied*, 280 A.3d 867 (Pa. 2022).

- 8 -

Rule 405 addresses return of service and states, in relevant part, as follows:

> (a) When service of original process has been made the sheriff or other person making service shall make a return of service forthwith. If service has not been made and the writ has not been reissued or the complaint reinstated, a return of no service shall be made upon the expiration of the period allowed for service.
>
> (b) A return of service shall set forth the date, time, place and manner of service, the identity of the person served and any other facts necessary for the court to determine whether proper service has been made.

Pa.R.Civ.P. 405(a) and (b) (note omitted). Our courts have consistently held that in the absence of fraud, the return of service of a sheriff, which is full and complete on its face, is conclusive and immune from attack by extrinsic evidence. **See Grady v. Nelson**, 286 A.3d 259, 265-66 (Pa. Super. 2022) (citing, *inter alia*, **Hollinger v. Hollinger**, 206 A.2d 1, 3-4 (Pa. 1965)). Instantly, Appellants have not claimed that the sheriff's return of service was inaccurate nor fraudulent. It is the petitioners' burden to establish that service was improper. **See American Express Co. v. Burgis**, 476 A.2d 944, 950 (Pa. Super. 1984).

### Service and Jurisdiction

In their first issue, Appellants contend that the trial court erred when it denied the petition to open because Appellants were not properly served with the writs of execution and interrogatories. Appellants argue that although Jacks served Mr. Russo at 2400 Weccacoe Ave., Mr. Russo was not an agent or employee of any of the Amazon entities named in the underlying action.

*See* Appellants' Brief at 14-17. Appellants assert that Mr. Russo worked for a separate Amazon entity named Amazon.com Services, LLC, which was not a specifically named garnishee on the writ of execution or named in the underlying action. *See id.* at 17-20. Appellants aver that the trial court erred in concluding that service upon Mr. Russo at Amazon.com Services, LLC constituted proper service upon the Amazon entities named as garnishees in the writ of execution. *See id.* at 17.

The trial court addressed Appellants' challenge to service and jurisdiction as follows:

> The affidavit of service filed by the Sheriff shows that service of the writ of execution was made upon Mr. Russo at [Appellants'] facility located at 2400 Weccacoe Avenue. [Appellants do] not dispute that this is a regular place of business for an Amazon entity. The Sheriff's return of service for all of the named Amazon entities identifies Mr. Russo as a person authorized to accept service. [Appellants] did not call Mr. Russo to testify or introduce any evidence from outside the record challenging the facts in the Sheriff's return of service. Instead, as best as the court can surmise, Mr. Russo received the writ of execution, the interrogatories, and all other legal papers served upon him at the Weccacoe Avenue location, and he either set them aside and forgot about them or simply ignored them. If Mr. Russo had not been authorized to accept service on behalf of one or all of the Amazon entities named in the writ of execution, or Jacks named an incorrect Amazon entity in its Writ of Execution, the appropriate procedure for Amazon to follow would have been to file preliminary objections. Pa.R.Civ.P. 3142, 3145. Instead, Amazon did nothing until it filed its petition [to open].
>
> Thus, based on the Sheriff's return of service, this court concluded that (i) Jacks served Mr. Russo; (ii) Mr. Russo accepted service; (iii) Mr. Russo represented to the Sheriff that he was authorized to accept service; (iv) [Appellants] knew or should have known about the pending writ of execution and interrogatories. Based

on these unassailable and uncontroverted conclusions, the court submits that service upon [Appellants] was proper.

* * *

[Appellants] contend that the writ . . . did not identify the correct Amazon entity and/or Mr. Russo was not an employee of any of the Amazon entities named in the writ . . . . [Appellants'] counsel represented that the current Amazon entity that operates out of 2400 Weccacoe Avenue is Amazon.com Services, LLC, which is not a garnishee named on the writ of execution. [Appellants] repeatedly argued that because Jacks did not serve the correct Amazon entity, the court should have opened the default judgment. But [Appellants'] argument puts the cart before the proverbial horse. [Appellants do] not dispute that the Sheriff served Mr. Russo with the writ . . . and interrogatories. Thus, the time and place for Amazon to raise these "corporate" defenses was through properly filed timely preliminary objections, not in a post-judgment petition [to open]. Moreover, [Appellants] never called Mr. Russo or introduced any evidence, beyond that which is publicly available through the Pennsylvania Bureau of Corporations. Even if the petition was a proper place for [Appellants] to raise the corporate defense, this court is not persuaded that [Appellants'] assertions have merit. The writ of execution identifies the following entities:

- Amazon

- Amazon Corporation

- Amazon Fulfillment Services, Inc.

- Amazon Logistics, Inc.

- Amazon Services, LLC

- Amazon, Inc.

- Amazon, LLC

- Amazon.com Services, Inc.

- Amazon Flex

- Amazon.com DEDC, LLC

Jacks presented a summary of the Amazon entities that have or currently conduct business at 2400 Weccacoe Avenue.

- 11 -

| Filing Date | Entity Number | Prior Name | Resulting Name | Corporate Document Filed | Named as Garnishee? | Sheriff's Return of Service? |
|---|---|---|---|---|---|---|
| 8/10/17 | 6591882 | Amazon Fulfillment Services, Inc. | N/A [First Filing] | Foreign Registration Statement | Yes | Yes |
| 1/23/18 | 6591882 | Amazon Fulfillment Services, Inc. | Amazon.com Services, Inc. | Amendment of Foreign Registration | Yes, both names | Yes, both names |
| 1/1/19 | 6591882 | Amazon.com DEDC LLC | Amazon.com Services, Inc. | Transfer of Foreign Registration (conversion) | Yes, both names | Yes, both names |
| 1/13/20 | 6591882 | Amazon.com Services, Inc. | Amazon.com Services LLC | Transfer of Foreign Registration (conversion) | Yes, first name only | Yes, first name only |
| 1/27/20 | 6591882 | Amazon Services LLC | Amazon.com Services LLC | Transfer of Foreign Registration (merger) | Yes, first name only | Yes, first name only |

The Pennsylvania Bureau of Corporations' entity number for all of these Amazon entities has remained unchanged through all of the variously named iterations: 6591882. Thus, the entity that [Appellants] now says was doing business at 2400 Weccacoe Avenue — Amazon.com Services, LLC — shares the same entity number as all of the other entities that were included on the writ of execution. . . .

Trial Ct. Op., 9/23/22, at 6-9 (some formatting altered).

Following our review of the record, we discern no abuse of discretion in the trial court's conclusion that Jacks satisfied the requirements for service on a corporation and that jurisdiction was properly before the trial court. *See Century Sur. Co.*, 140 A.3d at 53-54; *ABG Promotions*, 834 A.2d at 616. Appellants as petitioners bore the burden of establishing that service was improper, and that Mr. Russo was not authorized to accept service. *See American Express Co.*, 476 A.2d at 950; *see also Grady*, 286 A.3d at 265-66. As the trial court noted, Appellants did not call Mr. Russo, nor any other witness to challenge the facts in the sheriff's return of service. *See* Trial Ct.

- 12 -

Op., 9/23/22, at 6. The sheriff's return of service stated that Mr. Russo was an adult person in charge, and he accepted service. ***See id.***; ***see also*** Sheriff's Return of Service, 11/23/21. Moreover, it is undisputed that Mr. Russo is a manager of an Amazon warehouse facility at Amazon.com Services, LLC. ***See*** Trial Ct. Op., 9/23/22, at 3; ***see also*** Pa.R.Civ.P. 424(2) (addressing who may accept service for a corporate entity). Further, the trial court explained that Appellants and Mr. Russo's employer, Amazon.com Services, LLC, use nearly identical business names, the same address, and the same Pennsylvania business entity number ***See*** Order, 7/27/22, at 1 n.1 (stating that Appellants do not actually argue that they were was not served, "[r]ather, [Appellants] argue[] that [Jacks] served the incorrect entity."). The trial court concluded that two of the named Amazon garnishees/Appellants, Amazon.com Services, Inc. and Amazon Services LLC, were converted or merged into Amazon.com Services, LLC, which was the Pennsylvania business entity that employed Mr. Russo and for whom he accepted service. ***See*** Trial Ct. Op., 9/23/22, at 9-10. The trial court found that Jacks reasonably concluded that service upon an Amazon entity bearing the same Pennsylvania business entity number and located at 2400 Weccacoe Avenue, provided proper service and that this conclusion is further supported by the fact that Mr. Russo accepted service. ***See*** Trial Ct. Op., 9/23/22, at 6, 10; ***see also*** ***Cintas Corp.***, 700 A.2d at 920 (providing that "there must be a sufficient connection between the person served and the defendant to demonstrate that service was reasonably calculated" to provide notice). The trial court further

- 13 -

noted that Appellants did not challenge service by filing timely filed preliminary objections. *See* Trial Ct. Op., 9/23/22, at 7 (citing Pa.R.Civ.P. 3142, 3145).

On this record, we discern no error of law nor abuse of discretion because the sheriff's return of service, the accuracy of which was not challenged by Appellants, supported the trial court's conclusion that Mr. Russo was a person in charge who properly accepted service. *See* Trial Ct. Op., 9/23/22, at 6; *see also* Sheriff's Return of Service, 11/23/21. Simply stated, Appellants did not meet their burden to establish that service was improper. *See Grady*, 286 A.3d at 265-66; *American Express Co.*, 476 A.2d at 950. Accordingly, Appellants are not entitled to relief on their claim that the trial court lacked jurisdiction to enter the default judgment based on defective service.

## Petition to Open

In its second issue, Appellants assert that the trial court abused its discretion in denying the petition to open because Appellants satisfied the requirements of the equitable test necessary to open a default judgment. Appellants' Brief at 21-27. Specifically, Appellants contend that they: 1) filed a prompt petition to open the default judgment; 2) stated a reasonable excuse for its failure to appear or respond; and 3) provided a meritorious defense. *See id.* at 22-27.

The first prong of the test set forth in *ABG Promotions* concerns whether the petition to open the default judgment was filed promptly. *See*

**ABG Promotions**, 834 A.2d at 616.  When considering whether a petitioner filed a prompt response to the entry of a default judgment, we note as follows:

> The timeliness of a petition to open a judgment is measured from the date that notice of the entry of the default judgment is received.  The law does not establish a specific time period within which a petition to open a judgment must be filed to qualify as timeliness.  Instead, the court must consider the length of time between discovery of the entry of the default judgment and the reason for delay.
>
> *        *        *
>
> In cases where the appellate courts have found a "prompt" and timely filing of the petition to open a default judgment, the period of delay has normally been less than one month.

**Myers v. Wells Fargo Bank, N.A.**, 986 A.2d 171, 176 (Pa. Super. 2009) (citations omitted).

As the trial court noted, Jacks filed a praecipe for default judgment on December 21, 2021, and the trial court entered an order assessing damages on the default judgment on February 16, 2022.  **See** Trial Ct. Op., 9/23/22, at 10; **see also** Praecipe, 12/21/21; Judgment, 2/16/22.   However, Appellants did not file their petition to open until April 25, 2022.  **See** Pet. to Open, 4/25/22.

Although Appellants' petition to open was filed more than one month after the default judgement was entered, Appellants argue that we must look to when Appellants discovered the entry of the default judgment.  Appellants' Brief at 23-24.  Appellants contend that they were not aware of the default judgment until April 8, 2022, three days after the sheriff's levy on April 5,

2022. Appellants' Brief at 24. Appellants assert that they filed their petition to open seventeen days after discovering the default judgment. *See id.*; *see also* Pet. to Open, 4/25/22.

Here, in concluding that Appellants failed to meet the requirements to open the default judgment, the trial court explained:

> Jacks filed its praecipe for default judgment on December 21, 2021, and this court entered an order assessing damages on the default judgment on February 16, 2022. [Appellants] filed [their] petition [to open] on April 25, 2022. At best for [Appellants], **it filed its petition 67 days after this court entered the order assessing damages.** If the passage of time is calculated from the entry of default judgment on the docket, **[Appellants] waited 125 days to file [the] petition[ to open]**. The timeliness of a petition is measured from the receipt by the defendant, or garnishee in this case, of the notice of entry of default judgment. A petition is typically considered prompt if it is filed within a month of the default judgment.[3] Here, even giving [Appellants] the benefit of the doubt and evaluating the promptness claim based on 67 days, [Appellants] were beyond what is typically considered prompt. It goes without saying that 125 days is well beyond prompt. Thus, the equities weigh against opening the judgment on the basis of promptness.
>
> [Appellants] did not provide any reasonable excuse for [their] failure to file a timely responsive pleading, beyond the service arguments it previously made. A reasonable or justifiable excuse in this context means that the defendant has been without fault, as opposed to having demonstrated a dilatory attitude.

---

[3] "In cases where the appellate courts have found a 'prompt' and timely filing of the petition to open a default judgment, the period of delay has normally been less than one month." *Myers*, 986 at 176 (citations omitted and formatting altered).

Trial Ct. Op., 9/23/22, at 10-11 (citations omitted, some formatting altered, and emphases added).[4]

As support for its position regarding the promptness of the petition, Appellants cite to Mr. Alex Rivera's[5] affidavit or "declaration" which was appended to Appellants' petition to open. Appellants Brief at 24.[6] Although the declaration was attached to Appellant's petition, on this record, it does not appear that Appellants proffered it to the trial court to enter it into the record as evidence. Further, during the hearing on Appellants' petition to open, Jacks' counsel made the following objection concerning the Rivera Declaration:

> MR. SALAMAN [(Jacks' counsel)]: Your Honor, may I make one housekeeping note?
>
> THE COURT: If it's just a housekeeping note, I will let you make it. We are not going to veer off into merits argument here.

_____

[4] In its opinion, the trial court concluded that Appellants did not file a prompt response, and that Appellants did not have a reasonable excuse for its default. *See* Trial Ct. Op., 9/23/22, at 10-11. However, the trial court accepted that Appellants had a meritorious defense. *See id.* at 12 n.1 (stating "[t]his court accepts *arguendo* that [Appellants] maintain[] a meritorious defense, but the equities strongly weigh against opening the judgment based on the other two prongs of the test.").

[5] The record reflects that Mr. Rivera is a paralegal for Appellants' counsel. *See* Pet. to Open, 4/25/22, at ¶8.

[6] Appellants cite to "declaration evidence," and we note that the Russo Declaration was also appended to Appellants' petition to open. *See* Pet. to Open, 4/25/22. However, as noted, Appellants did not call either Mr. Russo or Mr. Rivera to testify at the hearing.

MR. SALAMAN: No, no. I will just object to paragraphs two through six as double hearsay for the declaration, at the appropriate time.

THE COURT: All right. All right. It's noted, but I'm not going to preliminarily do anything. If you want to raise something when it comes up and it's relevant to what we are doing, you can certainly re-raise the objection

N.T., 7/21/22, at 6. Immediately following this exchange, the following discussion occurred:

THE COURT: . . . Mr. O'Brien [(Appellants' counsel)], through your communication to us you indicated that you don't intend to call any witnesses. So we are deciding this based on what has been submitted either through argument or other written documents that you believe support your position. Do I have that correct?

MR. O'BRIEN: Yes. We reached out to the court to inquire as to whether or not the court expected testimony. If necessary, Judge, we do have Mr. Rivera on standby to testify, but I would note, just for purposes of the record, a petition to strike, of course, is a demur. So that is not an effort to which we would ask for testimonial evidence. If the court thinks it's appropriate, if there is a question raised by Attorney Salaman as to the Rivera declaration, Mr. Rivera is on standby to testify.

THE COURT: As a typical matter of process, I wouldn't tell you one way or the other whether you need testimony, one way or the other. That is completely up to you as to how to proceed. . . .

*Id.* at 6-7.

However, although the Rivera Declaration was never mentioned again during the hearing, Jacks' counsel referred to paragraph four of the Russo Declaration that was also appended to Appellant's petition to open, but apparently not proffered to the trial court to enter it into evidence. **See** Jacks' Brief at 15-16. Paragraph four reads as follows:

4. To the best of my recollection, on November 17, 2021, when I received copy of the Writ of Execution, I did not realize that this was an original copy of a document, and instead believed that I had received a courtesy copy of the document that had already been received by Amazon's legal team.

Russo Declaration, at ¶4. Regarding paragraph four, Jacks' counsel stated during the hearing: "I mean, Mr. Russo [laid] the papers aside because he thought they were duplicates." N.T., 7/21/22, at 41. Appellants did not present any witness testimony.

In order to support its petition to open the default judgement, Appellant has the burden to support its allegations of fact with competent evidence, which could include deposition transcripts or live witness testimony, "a burden which cannot be avoided by substituting an *ex parte* affidavit unless the respondent either files no answering affidavit or does not deny the veracity of the facts recited in the petition or affidavit." ***Hudgins v. Jewel T. Discount Store***, 505 A.2d 1007, 1010 (Pa. Super. 1986) (citation omitted).

Here, Jacks answered Appellants' petition to open and denied the veracity of Appellants' claims concerning when Appellants allegedly learned of the default judgement and whether Mr. Russo was a proper person to accept service. ***See*** Answer to Pet., 5/16/22, at ¶¶4, 8, 20. Specifically, Jacks denied Appellants' claim that Appellants only learned of the default judgment in April of 2022 after the sheriff's levy, and Jacks stated that the notice of the February 16, 2022, default judgment was mailed to Appellants on February 17, 2022, and that this was the ninth notice of these proceedings. ***Id.*** at ¶8. Additionally, Jacks denied Appellants' claim that Mr. Russo was an improper

person to accept service. Jacks stated it "believes and avers" that Mr. Russo is the "Senior Operations Manager at Amazon and representative of all Amazon entities identified in the Writ of Execution, including but not limited to his payroll employer Amazon.com Services LLC, originally and formerly known as Amazon Fulfillment Services, Inc. also formerly known as Amazon.com Services, Inc." *Id.* at ¶4 (formatting altered).

Moreover, Jacks objected to the Rivera Declaration and argued that the declaration was double hearsay. *See* N.T., 7/21/22, at 6. The record reveals no further discussion of the Rivera Declaration and apparently, the trial court did not rule on Jacks' hearsay objections. Although Jacks' counsel referred to paragraph four of the Russo Declaration, it was not proffered nor entered into evidence during the hearing.[7] The trial court concluded that "[i]t is unclear what Mr. Russo did with the interrogatories when he received them, and it is unclear what happened with all of the other legal papers Jacks served on the Amazon entities at 2400 Weccacoe Avenue." Trial Ct. Op., 9/23/22, at 3-4. On this record, the trial court as fact finder and arbiter of the law was free to accept all, part, or none of the arguments and documents presented at the hearing. *See, e.g., Stocki v. Goble*, 755 MDA 2020, 2021 WL 653029 (Pa. Super. filed Feb. 19, 2021) (unpublished mem.).[8] Indeed, neither Mr. Rivera,

---

[7] *See* N.T., 7/21/22, at 41; *see also* Jacks' Brief at 15-16.

[8] *See* Pa.R.A.P. 126(b) (stating that an unpublished, non-precedential memorandum decision filed after May 1, 2019, may be cited for its persuasive value).

Mr. Russo, nor any other witness testified in support of Appellants' challenges. Accordingly, on this record, we discern no abuse of discretion in the trial court's conclusion that Appellants failed to file their petition to open the default judgment timely. *See Myers*, 986 A.2d at 176; *ABG Promotions*, 834 A.2d at 618.

We note that the trial court opined that Appellants arguably maintained a meritorious defense to the underlying claim[9] but concluded that the equities strongly weighed against opening the judgment based on the two prongs of Appellant's lack of promptness in filing the petition to open and Appellant's lack of reasonable explanation for its failure to file a responsive pleading. *See* Trial Ct. Op., 9/23/22, at 12 n.1.; *see also ABG Promotions*, 834 A.2d at 616. On this record, we discern no abuse of discretion in the trial court's conclusion that Appellants failed to file a prompt petition to open the default judgment, and we conclude that Appellants are not entitled to relief. *See ABG Promotions*, 834 A.2d at 616 (stating that in order to satisfy the requirements to open a default judgment, the petitioner must meet **all three**

_____

[9] Appellants assert that the Amazon entities were named as garnishees solely based on a claim that a truck bearing the Amazon logo was observed at MJ Auto Body & Repair and that Appellants have no business relationship with MJ Auto Body & Repair, LLC and Mark Ritaldato, and further that the trial court should have granted equitable relief by opening the default judgment against it to avoid a windfall for Jacks. *See* Appellants' Brief at 26. In *Queen City Elec. Supply Co. v. Soltis Elec. Co.*, 421 A.2d 174 (Pa. 1980), our Supreme Court considered that the garnishor in that case would reap a windfall if the trial court denied the garnishee's petition to open judgment. *See id.* at 175. However, in *Queen City Elec. Supply Co.*, the petitioners satisfied **all three prongs** required to open a default judgment. *See id.* at 177-78.

**prongs** including filing a prompt petition, having a reasonable excuse, and providing a meritorious defense); **see also Myers**, 986 A.2d at 176 (holding that the trial court is not permitted to open a default judgment based on the equities of the case when the petitioner has failed to establish all three prongs of the required criteria).  Accordingly, we affirm the trial court's order denying Appellants' petition to open the default judgment.

Order affirmed.  Jurisdiction relinquished.[10]

_____

[10] On May 5, 2023, Jacks filed a motion asserting that Appellants cited **Meekins v. HSBC Bank Nevada, N.A.**, 1835 EDA 2011, 2013 WL 11257222 (Pa. Super. filed July 29, 2013) (unpublished mem.), **Salari-Lak v. Fellowship of Faith, Inc.**, 946 WDA 2013, 2015 WL 8674509 (Pa. Super. filed Dec. 14, 2015) (unpublished mem.), and **Elsherif v. All City Taxi, Inc.**, 1296 EDA 2016, 2017 WL 531900 (Pa. Super. filed Feb. 8, 2017) (unpublished mem.) which are unpublished cases.  **See** Motion, 5/5/23, at 2-3.  Jacks requests that this Court order said cases stricken from consideration in our disposition and admonish Appellants' counsel for citing these unpublished cases.  **See id.** at 3.  We note that unpublished memoranda filed by this Court prior to May 1, 2019, have no precedential value and citing to them violates our Internal Operating Procedures.  **See D'Amelia v. Toll Bros., Inc.**, 235 A.3d 321, 330 n.9 (Pa. Super. 2020); Superior Court Internal Operating Procedures, 210 Pa.Code § 65.37.  Based on our disposition, we need not address Jacks' motion and DENY it as moot.  However, we caution Appellants' counsel to comply with this Court's Operating Procedures, and in the future, not to cite to unpublished cases filed prior to May 1, 2019.  **See** Pa.R.A.P. 126(b) (stating that non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited as persuasive).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/25/2023