J-A13038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TEDESCO EXCAVATING & PAVING, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FWH DEVELOPMENT, LLC | : | No. 1092 WDA 2024 |
| | : | |
| APPEAL OF: FRED W. HESPENHEIDE AND CHRISTINE A. HESPENHEIDE | : | |

Appeal from the Order Entered August 1, 2024
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  No. GD 19-006017

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED: AUGUST 28, 2025**

Appellants, Fred W. Hespenheide and Christine A. Hespenheide, appeal from the trial court's order denying their petition to intervene.  After careful review, we reverse.

**Background**

Underlying Action and FWH's Appeal

By way of background, FWH Development, Inc. ("FWH") sought to develop a residential home community known as Whitetail Meadows in Butler County, Pennsylvania.  FWH contracted with Appellee, Tedesco Excavating & Paving, Inc. ("Tedesco"), to perform certain work in connection with the project.  Subsequently, on April 23, 2019, Tedesco filed a complaint against FWH, alleging breach of contract and additionally seeking prejudgment

interest, penalty interest, and attorneys' fees under the Contractor and Subcontractor Payment Act ("CASPA"), 73 P.S. §§ 501-517. Following a jury trial in May of 2022, the jury awarded $401,046.00 to Tedesco on its breach-of-contract claim. Thereafter, Tedesco filed a motion to mold the verdict for interest, penalty interest, and attorneys' fees pursuant to CASPA, and FWH filed a motion for post-trial relief. The trial court subsequently denied FWH's motion for post-trial relief, and granted in part Tedesco's motion to mold the verdict. The total molded verdict amounted to $678,238.31.

FWH appealed. On appeal, a divided three-judge panel affirmed the $678,238.31 judgment entered in favor of Tedesco on June 24, 2024. The majority opinion affirmed the jury's verdict in favor of Tedesco for breach of contract as well as the supplementary awards the trial court made pursuant to CASPA. The concurring and dissenting opinion concurred with the majority's decision to affirm the jury verdict in favor of Tedesco for breach of contract. However, it disagreed that Tedesco was entitled to the supplementary awards available under CASPA.

On July 5, 2024, FWH filed an application for reargument, in which it sought review of the Court's decision relating to only the CASPA awards. On August 29, 2024, this Court granted reargument *en banc*, and withdrew its June 24, 2024 opinions. *En banc* argument occurred on May 21, 2025. As of the date of this writing, an *en banc* decision has not yet been issued. ***See Tedesco Excavating & Paving, Inc. v. FWH Dev., LLC***, Docket No. 995 WDA 2022.

- 2 -

Garnishment Proceedings

In the meantime, FWH's appeal did not operate as a supersedeas because FWH did not file the necessary security. **See** Pa.R.A.P. 1731 ("[A]n appeal from an order involving solely the payment of money shall … operate as a supersedeas upon the filing with the clerk of the lower court of appropriate security in the amount of 120% of the amount found due by the lower court and remaining unpaid."). On October 18, 2022, Tedesco filed a praecipe for writ of execution and garnishment interrogatories upon, among others, NVR, Inc. d/b/a Ryan Homes ("NVR").[1,2] NVR was served with the

_____

[1] NVR is a homebuilder. **See** Hespenheides' Brief at 12; Tedesco's Brief at 11.

[2] This Court has explained:

> Garnishment is a proceeding wherein the judgment creditor seeks to determine whether the garnishee owes a debt to the judgment debtor, or has property of the judgment debtor in his possession. The garnishment proceedings start[] with service upon the garnishee of a writ of execution and interrogatories. The object of the interrogatories is to determine whether the suspected debt exists. The judgment previously obtained by the judgment creditor works an equitable assignment of the debt owed to the judgment debtor to the extent necessary to satisfy the judgment, and the judgment creditor stands in the same position *vis a vis* the garnishee as would the judgment debtor. After garnishment, the only obligations upon the garnishee are to answer the interrogatories and to notify the judgment debtor, by registered or certified mail at his last known address, of the impending garnishment proceedings.

> Garnishment is a remedy created to enable a judgment creditor to reach assets of its debtor held by a stranger and is the means

*(Footnote Continued Next Page)*

writ of execution on October 31, 2022. In doing so, Tedesco sought to garnish funds that NVR allegedly owed to FWH under a Lot Purchase Agreement entered between NVR and FWH.[3] Generally, pursuant to the Lot Purchase Agreement, Tedesco says that FWH agreed to sell, and NVR agreed to pay FWH for, certain lots in connection with the Whitetail Meadows development. *See* Tedesco's Brief at 11; *see also id.* ("As the developer of the Whitetail Meadows development, FWH was responsible for developing, preparing, and selling the [l]ots to NVR, which, in turn, built homes on the [l]ots and sold them to buyers. As a result of these lot sales, NVR owed payment of lot sale proceeds to FWH under the Lot Purchase Agreement….") (citations omitted).

On February 13, 2023, the Hespenheides — who are husband and wife — filed a petition to intervene.[4] Therein, among other things, the Hespenheides claimed that they are the registered owners of certain parcels of land which are part of the Whitetail Meadows development, and that they own such properties as tenants by the entirety. *See* Petition to Intervene,

---

by which a creditor collects his debt out of property of the debtor in the hands of a third party.

*Jacks Auto Parts Sales, Inc. v. MJ Auto Body and Repair, LLC*, 305 A.3d 162, 168 (Pa. Super. 2023) (cleaned up).

[3] We discuss the Lot Purchase Agreement further herein. While there are, in fact, two separate Lot Purchase Agreements, we refer to them collectively as the Lot Purchase Agreement to simplify our discussion, as there are no substantial differences between them.

[4] As we discuss later, Fred Hespenheide is the sole member of FWH. *See* Hespenheides' Brief at 30; Tedesco's Brief at 43.

2/13/23, at ¶ 4. They averred that FWH has never owned these properties or appeared in the chain of title. *Id.* at ¶ 9. With respect to the Lot Purchase Agreement, which was originally entered in April 2014, the Hespenheides stated that FWH is listed as the contract purchaser of certain of these properties, but that FWH never purchased them. *See id.* at ¶¶ 12-15, 28, 37. According to the Hespenheides, following other amendments to the Lot Purchase Agreement, FWH and NVR entered into a fourth amendment to the Lot Purchase Agreement on or about December 19, 2019. *Id.* at ¶ 26. Pursuant to this fourth amendment, the Hespenheides said that the Lot Purchase Agreement indicates that they — as the "[u]nderlying [s]ellers" — are record title owners of the properties and will convey fee simple title to NVR at each settlement. *Id.* at ¶¶ 26-27. They further averred that every property sold at the Whitetail Meadows development to date has been transferred from the Hespenheides as tenants by the entirety and that the proceeds from each lot sale have been paid to the Hespenheides. *Id.* at ¶¶ 28-30.

With respect to the writ of execution directed at NVR, the Hespenheides explained that NVR claims a right to garnish the lot sale proceeds under the Lot Purchase Agreement and/or the properties, even though FWH has never held title to the properties and has never received, or been entitled to receive, the lot sale proceeds. *Id.* at ¶ 33. They alleged that, following the service of the writ on NVR, negotiations took place over a period of months concerning various issues related to the writ and the dispute surrounding Tedesco's ability to attach the lot sale proceeds. *See id.* at ¶¶ 35-36. Ultimately, the

Hespenheides said an escrow agreement was entered into between NVR, Tedesco, FWH, and the Hespenheides on January 23, 2023, which allowed a portion of the lot sale proceeds to be deposited into escrow in order to accomplish many ends, including allowing the Hespenheides to file a petition to intervene. *See id.* at ¶ 36; *id.* at Exhibit M ("Escrow Agreement").[5]

Based on the foregoing, the Hespenheides claimed that they are the only record owners of the properties, and any judgment against FWH has no bearing on the properties owned by them. *Id.* at ¶ 37. Furthermore, they averred that, pursuant to the Lot Purchase Agreement and the long-standing

_____

[5] Our own review of the escrow agreement shows, *inter alia*, that NVR had also indicated that, because of the judgment and writ of execution, it could not proceed with its purchase of lots under the terms of the Lot Purchase Agreement. Escrow Agreement at 1. In order to allow NVR to continue purchasing lots under the terms of the Lot Purchase Agreement pending the resolution of FWH's appeal, the parties additionally sought to enter into the escrow agreement. *Id.* The escrow agreement also stated that $5,000 of the lot sale proceeds from each lot closing shall be remitted directly to the Hespenheides to be applied to ongoing development obligations for the property. *Id.* at 2.

Furthermore, the escrow agreement addressed how the lot sale proceeds should be distributed under certain scenarios. One such scenario provided:

> In the event that a [c]ourt determines that FWH does have ownership of the [l]ot [s]ale [p]roceeds that is [*sic*] available for garnishment and FWH loses on its [a]ppeal, in whole or in part, that portion of the escrowed [l]ot [s]ale [p]roceeds shall be disbursed to Tedesco that satisfies the [j]udgement [*sic*], as affirmed or revised on appeal and covers any accrued interest and awarded legal fees and costs, and any remaining portion of the [l]ot [s]ale [p]roceeds shall be distributed to the Hespenheides.

*Id.*

course of conduct between NVR and themselves, they continue to be entitled to the lot sale proceeds as they become payable in accordance with the Lot Purchase Agreement. *Id.* at ¶ 38. Because they alleged that they have a claim to the underlying properties subject to the writ and garnishment proceedings set forth against NVR, the Hespenheides sought to intervene. *Id.* at ¶¶ 40-51.

Thereafter, Tedesco filed an answer to the Hespenheides' petition to intervene and a brief in opposition. Tedesco argued, *inter alia*, that the Lot Purchase Agreement does not entitle the Hespenheides to funds that are clearly due from NVR to FWH under the contract, and noted that NVR also takes the position that the lot sale proceeds under the Lot Purchase Agreement are due and owed to FWH, not the Hespenheides. Brief in Opposition, 3/3/23, at 1, 3. Moreover, Tedesco claimed that the Hespenheides improperly waited for nearly four months after they became aware of Tedesco's garnishment efforts, and after the escrow agreement had been entered, to intervene. *Id.* at 1-2. It also pointed out that Fred Hespenheide is the owner of FWH, and that the Hespenheides are represented by the same counsel as FWH. *Id.* at 2.

On March 13, 2023, while FWH's appeal was still awaiting review by a three-judge panel of this Court, the trial court entered the following order:

> [U]pon resolution of the pending appeal [by FWH] to the Superior Court, FWH or its designee shall be permitted to contest the issue of the ownership of the [l]ot [s]ale [p]roceeds under the Lot Purchase Agreement[], with Tedesco['s] reserving its rights to contest both the ownership issue and the timeliness of FWH's

request. Designee for purposes of this [o]rder shall be Fred W. Hespen[he]ide and Christine A. Hespenheide, individually as [h]usband and [w]ife. Should Fred W. Hespenheide and Christine A. Hespenheide be permitted to intervene in the case, then Tedesco reserves the right to seek garnishment proceedings against Fred W. Hespenheide and Christine A. Hespenheide individually. Further, Fred and Christine Hespenheide's rights to contest and defend any claims including but not limited to issues of timeliness [*sic*].

Order, 3/13/23.

Subsequently, after the three-judge panel's decision was issued for FWH's appeal on June 24, 2024, Tedesco filed a motion for a hearing concerning the lot sale proceeds and escrow funds on July 24, 2024. A hearing took place on July 31, 2024.

At the July 31, 2024 hearing, among other things, Tedesco asked the trial court to deny the Hespenheides' petition to intervene and rule that the lot sale proceeds belong to FWH. N.T., 7/31/24, at 6 (unnumbered). Tedesco reported that there was "about $790,000" in the escrow account, and asserted that that "this is dire because this is the only asset [FWH has]." ***Id.*** at 5 (unnumbered). It explained that "everyone knew that Fred and his wife owned the underlying land, but the whole setup of this deal … was [that Fred and his wife] owned the land; his company, FWH, was going to develop it; and then they were going to sell it to NVR." ***Id.*** at 7 (unnumbered). ***See also id.*** at 4 (unnumbered) (Tedesco's stating that "it was an FWH/NVR contract for the development of these lots"). After discussing various terms in the Lot Sale Agreement, Tedesco argued that "all of this made sense that Fred decided to set up a sole-purpose entity to shield him, the LLC, FWH, and

- 8 -

under the terms of that agreement, it was crystal clear that the money flows from NVR to the seller, who is FWH, and so we executed on that." *Id.* at 9 (unnumbered). As such, Tedesco claimed that the Hespenheides "have no legally protected interest" as Tedesco is attaching the lot sale proceeds — not the lots — and the Lot Sale Agreement "make[s] clear that the money flows from NVR to FWH." *Id.* at 6, 8 (unnumbered); *see also id.* at 9. Further, even if the proceeds were actually paid to the Hespenheides, Tedesco advanced that the Lot Purchase Agreement "says you can't take course of conduct to vary this agreement." *Id.* at 15-16 (unnumbered). With respect to the fourth amendment, Tedesco asserted that it "added" the Hespenheides as signatories to the Lot Purchase Agreement, but "it did not modify the payment obligation[,]" which was to FWH. *Id.* at 16 (unnumbered).

Additionally, Tedesco said that the petition to intervene was untimely, as "there was a 20-day window within our garnishment interrogatories where anybody could have objected. They did not object. And then four months later[,] they filed this petition to intervene, which was after all the parties entered into this [e]scrow [a]greement." *Id.* at 17 (unnumbered). Further, Tedesco pointed out that the Hespenheides' interests are adequately represented already, as "Fred is the sole owner of FWH." *Id.* at 19 (unnumbered).

In response, the Hespenheides argued that the hearing was premature, as FWH's appeal had not yet been finally resolved in light of FWH's application for reargument, which was still pending at that time. *See id.* at 20-21

(unnumbered). Moreover, the Hespenheides claimed there is a "ten-year course of conduct" where the proceeds were paid to them, not FWH. *Id.* at 12-13 (unnumbered). They contended that "[t]he transactions were deeds from Fred and Christine Hespenheide, no deed to FWH, and a settlement statement and a payment that went directly from NVR to Fred and Christine Hespenheide, the actual sellers of the property, the grantor of the deed, as the property was transferred out." *Id.* at 14 (unnumbered). They also emphasized the fourth amendment to the Lot Sale Agreement, in which the Hespenheides said they "correct[ed] the underlying error that FWH was, in fact, ever the owner of this property[,]" and claimed that any merger clause in the Lot Purchase Agreement was made inapplicable by subsequent amendments. *Id.* at 13, 22-23 (unnumbered). When asked by the trial court if the Hespenheides could have intervened before the case went to trial, they argued that they could not have done so, as "they were not a party to the contract with Tedesco[,]" and "[t]heir interest is in the asset that was garnished. It's in the funds that were the subject of the writ of execution, not in the underlying trial…." *Id.* at 24 (unnumbered).

Following the hearing, the trial court entered an order on August 1, 2024, denying the Hespenheides' petition to intervene. Therein, it also stated that "the release of the [l]ot [s]ale [p]roceeds and/or the amount held in

escrow … shall be stayed until FWH's application for reargument is resolved by the Pennsylvania Superior Court." Order, 8/1/24.[6]

On August 29, 2024, the Hespenheides filed a notice of appeal. The trial court did not order the Hespenheides to file a Pa.R.A.P. 1925(b) concise statement; it later issued a Rule 1925(a) opinion on December 20, 2024.[7] In the Rule 1925(a) opinion, the trial court stated that the Hespenheides "unduly delayed in filing their petition to intervene, and such an intervention would prejudice the rights of the parties." Trial Court Opinion ("TCO"), 12/20/24, at 5. In addition, the trial court concluded that the Hespenheides' interests were already adequately represented, as "FWH entered into land purchase agreements with NVR[,]" and Fred Hespenheide "is the exclusive owner of FWH…, thus his interests are represented in the pending garnishment action between Tedesco and FWH…." *Id.* at 9 (citation omitted).

**Issues**

On appeal, the Hespenheides raise two issues for our review:

_____

[6] Though the trial court's order was dated and filed on July 31, 2024, Pa.R.Civ.P. 236 notice was not given until August 1, 2024. *See* Pa.R.Civ.P. 236(b) (requiring that the prothonotary note in the docket the giving of written notice of the entry of an order); Pa.R.A.P. 108(b) (stating that the date of entry of a civil order "shall be the date on which the clerk makes the notation in the docket that written notice of entry of the order has been given as required by [Rule] 236(b)").

[7] We note that the Honorable Michael A. Della Vecchia, Senior Judge, presided over this case until September 23, 2024. The case was then assigned to the Honorable Daniel D. Regan. Judge Regan authored the December 20, 2024 Rule 1925(a) opinion.

1. Whether the trial court erred as a matter of law by refusing to allow [the Hespenheides] to intervene where they, and **not** FWH…, are the rightful owners of proceeds from lot sales to NVR…, they are not alter egos of FWH … (and no findings have been made that they are), and they will be adversely affected by the distribution of said proceeds in the post-judgment execution proceedings initiated by Tedesco … against FWH…[.]

2. Whether the trial court erred as a matter of law in ruling that the appeal should be quashed when [the Hespenheides] timely filed a petition to intervene to protect their independent rights to property that were not at issue until **after** receiving notice of the post-judgment execution proceedings initiated by Tedesco … against FWH … on October 18, 2022.

Hespenheides' Brief at 4-5 (emphasis in original).[8]

## Analysis

### Collateral Order Doctrine

Before reaching the merits of the Hespenheides' issues, we must determine whether this appeal is properly before us. Generally, "an appellate court's jurisdiction extends only to review of final orders. A final order is an order that disposes of all claims and of all parties or is entered as a final order pursuant to a determination of finality by a trial court or other government unit." ***J.C.D. v. A.L.R.***, 303 A.3d 425, 429 (Pa. 2023) (cleaned up). However, "the collateral order doctrine, which has been codified in [Pa.R.A.P.] 313, permits immediate appellate review of certain non-final collateral orders." ***Id.*** at 429-30 (cleaned up). A collateral order consists of "an order separable from and collateral to the main cause of action where the right involved is too

---

[8] We have re-ordered the Hespenheides' issues for ease of disposition. Our analysis addresses their issues in the framework of applying the relevant law.

important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b).

The Hespenheides claim that the collateral order doctrine is satisfied here. We agree. First, the trial court's order denying the Hespenheides' request to intervene is separable and collateral to both the breach-of-contract action filed by Tedesco against FWH and the garnishment proceedings initiated by Tedesco. Second, regarding whether the right involved is too important to be denied review, this Court has determined that "the right to property … is deeply rooted in public policy." ***Nemirovsky v. Nemirovsky***, 776 A.2d 988, 991 (Pa. Super. 2001). Third, if review is postponed, the Hespenheides' claim will be irreparably lost, as the lot sale proceeds are set to be released from escrow to Tedesco if any of the judgment is upheld on appeal, pursuant to the trial court's August 1, 2024 order.[9] Further, our Supreme Court has stated that "a party who is denied intervention and who satisfies the requirements of Rule 313 must appeal from the order denying intervention within thirty days of its entry or lose the right to appeal the order entirely." ***Shirley v. Pennsylvania Legislative Reference Bureau***, 318 A.3d 832, 848 (Pa. 2024) (citations omitted). As such, we determine that the collateral order doctrine has been met.

---

[9] While this Court's June 24, 2024 opinions were withdrawn in total, we reiterate that FWH only challenged the awards made pursuant to CASPA in seeking reargument *en banc*.

<u>Petitions to Intervene</u>

With respect to petitions to intervene, "[i]t is well-established that a question of intervention is a matter within the sound discretion of the trial court and unless there is a manifest abuse of discretion, its exercise will not be interfered with on review." **Selbovitz v. Streamline Solutions LLC**, 332 A.3d 826, 830 (Pa. Super. 2025) (cleaned up). "Discretion is abused if, in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason." **Shirley**, 318 A.3d at 851 (cleaned up).

Pennsylvania Rule of Civil Procedure 2327 addresses who may intervene in a civil action. Rule 2327 sets forth:

> At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if
>
> (1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or
>
> (2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; or
>
> (3) such person could have joined as an original party in the action or could have been joined therein; or
>
> (4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

Pa.R.Civ.P. 2327.

Pennsylvania Rule of Civil Procedure 2329 additionally states:

Upon the filing of the petition and after hearing, of which due notice shall be given to all parties, the court, if the allegations of the petition have been established and are found to be sufficient, shall enter an order allowing intervention; but an application for intervention may be refused, if

(1) the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action; or

(2) the interest of the petitioner is already adequately represented; or

(3) the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties.

Pa.R.Civ.P. 2329. Thus, in reading Rule 2329 with Rule 2327, "the effect of Rule 2329 is that if the petitioner is a person coming within one of the classes described in Rule 2327, the allowance of intervention is not discretionary, but is mandatory, unless one of the grounds for refusal of intervention enumerated in Rule 2329 is present." *Selbovitz*, 332 A.3d at 831 (citation omitted).

<u>Rule 2327</u>

To begin, looking at Rule 2327, the Hespenheides argue that they "have a legally enforceable interest in the lot sale proceeds…." Hespenheides' Brief at 29 (unnecessary capitalization and emphasis omitted). They observe that the trial court made "no express finding on whether the Hespenheides fall within the categories of persons that are permitted to intervene under Rule 2327." *Id.* They say that, because "the trial court centers its analysis on the limitations of Rule 2329, which is analyzed only if a basis for intervention applies under Rule 2327, the trial court appears to impliedly acknowledge that

the Hespenheides have an interest that would allow intervention under Rule 2327." ***Id.*** According to the Hespenheides, "the outcome of the post-judgment execution proceedings will affect their 'legally enforceable interest' as sole owners of the [l]ot [s]ale [p]roceeds that Tedesco has sought to collect and therefore, they shall be permitted to intervene under Rule 2327(4)." ***Id.***; ***see also*** Pa.R.Civ.P. 2327(4) (stating that, at any time during the pendency of an action, a person shall be permitted to intervene if "the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action"). They claim that "[t]here is no dispute that the Hespenheides were the sole owners of the [p]roperties at the time of the NVR purchases, and thus are the sole owners of the [l]ot [s]ale [p]roceeds that Tedesco is seeking to garnish." ***Id.*** at 30.

> Our Supreme Court has explained:

> Whether a potential party has a legally enforceable interest permitting intervention under Rule 2327(4) turns on whether they satisfy our standing requirements. Generally, the doctrine of standing is an inquiry into whether the potential party has demonstrated aggrievement, by establishing a substantial, direct and immediate interest in the outcome of the litigation. A substantial interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A direct interest requires a showing that the matter complained of caused harm to the party's interest. An interest is immediate if that causal connection is not remote or speculative.

***Shirley***, 318 A.3d at 852 (cleaned up). ***See also Pennsylvania R.R. Co. v. Hughart***, 222 A.2d 736, 738 (Pa. 1966) (stating that the 'legally enforceable interest' limitation of Rule 2327(4) "owes its origin to the desire of the courts

to prevent the curious and meddlesome from interfering with litigation not affecting their rights") (citation omitted).

Here, the Hespenheides have satisfied the standing requirements. First, their interest in the outcome of the garnishment proceedings is substantial. Initially, nobody disputes that the Hespenheides own the at-issue lots. Further, while Tedesco underscores that it seeks to garnish the lot sale proceeds — not the lots themselves — the fourth amendment to the Lot Purchase Agreement states, among other things, that: the Hespenheides are the record title owners of the property and will be conveying fee simple title to NVR at each settlement; the Hespenheides have a "vested interest in the [a]greement and the fee simple ownership of the [p]roperty"; the Hespenheides "consent and agree to fully perform all terms, provisions, conditions and obligations of [FWH] under this [f]ourth [a]mendment and the [a]greement"; and that the Hespenheides "represent and warrant to [NVR] that they own and will convey the [p]roperty to [NVR] in fee simple, free and clear of all liens in accordance with the terms and conditions of the [a]greement." **See** Petition to Intervene at Exhibit K ("Fourth Amendment") at 1 (unnumbered); **see also** Hespenheides' Brief at 13-14 (discussing the fourth amendment to the Lot Purchase Agreement); Hespenheides' Reply Brief at 2 (same). Moreover, the Hespenheides averred, and provided documentation to support, that the proceeds from the lot sales have been paid to them in the past. **See** Petition to Intervene at Exhibit L ("Settlement Statements"); **see also** Hespenheides' Brief at 14 (stating that the settlement

statements show that the proceeds from each lot sale have been paid directly to the Hespenheides).  Thus, they have shown that their interest in the outcome of the garnishment proceedings surpasses the common interest of all citizens in procuring obedience to the law.

Second, the Hespenheides' interest in the outcome of the garnishment proceedings is direct.  If the lot sale proceeds are released to Tedesco, it would deprive the Hespenheides of collecting those proceeds, which they say they have been receiving from NVR for years.

Third, the Hespenheides' interest in the outcome of the garnishment proceedings is immediate.  The causal connection between allowing the lot sale proceeds to be garnished, and the harm caused to the Hespenheides in not receiving those proceeds, is not remote or speculative.  Accordingly, we conclude that the Hespenheides have a legally enforceable interest, which allows them to intervene under Rule 2327(4).

In reaching this determination, we emphasize that we make no conclusion as to whether the Hespenheides — as opposed to FWH — own the lot sale proceeds.  Rather, we only ascertain that the Hespenheides have standing to litigate the ownership issue.  **See Shirley**, 318 A.3d at 857 (stating that the proposed intervenors "do not have to demonstrate their entitlement to relief on the merits in order to establish their standing to intervene").

## Rule 2329

Next, we consider whether the trial court had a basis to refuse the Hespenheides' request to intervene under Rule 2329. As only Rule 2329(2) and (3) are at issue, we limit our analysis to those subsections.

*Rule 2329(2)*

Turning first to Rule 2329(2), we consider whether the Hespenheides' interests are already adequately represented. **See** Pa.R.Civ.P. 2329(2), **supra** (stating that a trial court may refuse intervention if the petitioner's interest is already adequately represented). Our Supreme Court has advised:

> The word "adequately" in Rule 2329(2) means representation "to a satisfactory or acceptable extent." Thus, the mere fact an existing party may align with the putative intervenor's legally enforceable interests is not determinative of whether such representation is adequate so as to support the refusal of intervention, where it is also shown that such party is not effectively representing the intervenor's interests. In other words, the phrase 'adequately represented' calls for both an inquiry whether there is of record a party who technically represents the interests of the intervenor and also an inquiry whether such representatives are in fact performing their function of representation in a proper and efficient manner.

**Shirley**, 318 A.3d at 852-53 (cleaned up).

Here, in addressing whether the Hespenheides' interests in the matter are already adequately represented, the trial court — relying on an unpublished decision from the Commonwealth Court, **New Coal. for Alts. in Jewish Educ., Inc. v. Piltch**, 2013 WL 3946240 (Pa. Cmwlth. Feb. 1, 2013)

(unreported memorandum opinion)[10] — determined that, because Fred Hespenheide is the exclusive owner of FWH, "his interests are represented in the pending garnishment action between Tedesco and FWH…." TCO at 9 (citation omitted). In addition, Tedesco advances that "the Hespenheides and FWH are represented **by the same counsel**; therefore, the Hespenheides cannot seriously contend that their interests diverge with those of FWH such that their interests are not adequately represented by FWH." Tedesco's Brief at 44 (emphasis in original).

The Hespenheides, however, argue that the trial court's reasoning "completely and entirely disregards Christine Hespenheide's interest in the [l]ot [s]ale [p]roceeds. The trial court somehow concludes that because Fred Hespenheide is the sole member of FWH, FWH can adequately represent both his interest and the interests of a completely separate individual who has no control over FWH." Hespenheides' Brief at 30. Further, the Hespenheides claim that, "[w]hile an officer of a company is authorized to represent that company's interests, a company cannot represent the individual, separate and distinct interests of an officer and especially not those interests of a third party that is not affiliated with the company." *Id.* at 32. They assert that

---

[10] *See Dobransky v. EQT Prod. Co.*, 273 A.3d 1133, 1146 n.10 (Pa. Super. 2022) (*en banc*) (recognizing that Commonwealth Court decisions are not binding upon this Court but may serve as persuasive authority); **see also** Pa.R.A.P. 126(b) (stating that unreported memorandum opinions of the Commonwealth Court filed after January 15, 2008, may be cited for their persuasive value).

"[d]isregarding their interests … based on an erroneous finding that the Hespenheides' tenancy by the entireties is adequately represented by FWH is a manifest abuse of discretion and must be reversed." ***Id.***

Upon review, we conclude that the trial court abused its discretion in refusing intervention under Rule 2329(2).  To the extent the trial court references ***New Coal.***, we find that case to be distinguishable and of limited persuasive value.  In ***New Coal.***, there was a falling out among directors and officers of a nonprofit corporation, which led to the nonprofit corporation's seeking, among other things, turnover of assets and injunctive relief against two of the directors.  ***New Coal.***, ***supra***, at *1.  During this litigation, one of the two directors claimed that a limited liability company, of which she was the president and sole member, shared in ownership of certain assets that the nonprofit corporation claimed to solely own.  ***See id.*** at *1-2.  The limited liability company filed a petition to intervene, which the trial court denied.  ***Id.*** at *2-3.  On appeal, in affirming the denial of the limited liability company's petition to intervene, the Commonwealth Court concluded that the limited liability company's interests were already adequately represented by its sole member who was a party to the litigation.  ***Id.*** at *7.  The Commonwealth Court explained that, under the applicable statute at the time, a member of a limited liability company is authorized to bring suit on behalf of the company. ***Id.***  It reasoned, "As [one of the parties in this case] is the sole member of [the limited liability company], there is no other person or entity that has an interest in the company's assets.  Further, there is no other person or entity

- 21 -

that would be capable of bringing suit on [the limited liability company's] behalf." *Id.* It opined that it is "disingenuous" to argue that the limited liability company's interests were unrepresented, and it noted that "intervention would not introduce new actors or counsel to the proceedings." *Id.* It additionally observed that the interests of the limited liability company were clearly being represented well before the filing of the petition to intervene. *Id.*

Here, in contrast, we have inverse circumstances. FWH is a party to the litigation, not the Hespenheides. Because Fred Hespenheide is the sole member of FWH, the trial court and Tedesco claim that the Hespenheides' interests are already adequately represented. However, both the trial court and Tedesco ignore that Christine Hespenheide — whom we have already determined has a legally enforceable interest in the lot sale proceeds — is not a member of FWH and, thus, she would be a new actor in the litigation pursuant to *New Coal.'s* reasoning. Also, unlike the limited liability company in *New Coal.*, the Hespenheides themselves are capable of bringing suit. Moreover, to the extent Tedesco argues that FWH and the Hespenheides are represented by the same counsel and therefore their interests cannot diverge, any lack of conflict in their interests does not necessarily mean that FWH is already adequately representing the Hespenheides' interests. *See Shirley*, 318 A.3d at 852-53 ("[T]he mere fact an existing party may align with the putative intervenor's legally enforceable interests is not determinative of whether such representation is adequate so as to support the refusal of

intervention, where it is also shown that such party is not effectively representing the intervenor's interests.").[11]  Given that it is undisputed that the Hespenheides own the at-issue lots, and because they claim that they have been receiving the lot sale proceeds for the past decade and that the fourth amendment reflects that they will be conveying fee simple title to NVR, it is unreasonable to not let the Hespenheides litigate the ownership of the lot sale proceeds on their own behalf.  For these reasons, we conclude that the trial court abused its discretion in determining that FWH already adequately represented the Hespenheides' interests and in refusing their request to intervene under Rule 2329(2).

### Rule 2329(3)

Finally, we address Rule 2329(3).  ***See*** Pa.R.Civ.P. 2329(3) (stating that a trial court may refuse intervention if "the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties").  The trial court determined that the Hespenheides unduly delayed by filing their petition for intervention: (1) after the conclusion of jury trial; (2) well over a year after the jury's verdict; (3) after the 20-day window to

---

[11] Based on our review of the docket, it appears that only the Hespenheides (not FWH) have submitted filings relating to the ownership of the lot sale proceeds before the trial court.  Aside from pointing out that Fred Hespenheide is the sole member of FWH and that the Hespenheides have the same counsel as FWH, neither the trial court nor Tedesco explain how FWH has represented the Hespenheides' interests so far in the garnishment proceedings.

respond to the interrogatories served on NVR had expired; and (4) after the escrow agreement had been executed. *See* TCO at 6-7. Further, the trial court opined that granting intervention after the escrow agreement had been executed would be "an unnecessary disruption and hence, prejudicial to the parties." *Id.* at 7. It also said that "[t]o allow intervention would unduly prejudice the interests of a party in whose favor the matter has been resolved." *Id.*

We determine that the trial court also abused its discretion in refusing intervention under Rule 2329(3). At the outset, to the extent the Hespenheides waited until after the conclusion of the jury trial and over a year after the jury's verdict to file their petition to intervene, we agree with the Hespenheides that they had no reason to intervene in the proceedings until the writ of execution was filed. The Hespenheides explain:

> Neither Fred Hespenheide nor Christine Hespenheide were parties to the construction contract upon which Tedesco's sole claim in the underlying litigation was based. Tedesco did not allege, let alone prove, that the corporate veil of FWH should be pierced such that the assets of Fred or Christine Hespenheide would be subject to post-judgment enforcement proceedings. The [l]ot [s]ale [p]roceeds were neither directly at issue nor implicated in any way in the underlying litigation. Frankly, it is difficult, if not impossible, to identify a basis upon which the Hespenheides could have intervened at any point prior to when the [l]ot [s]ale [p]roceeds were placed at issue by virtue of Tedesco's service of a [w]rit of [e]xecution on NVR.

Hespenheides' Brief at 22-23 (citation omitted).[12]  We concur.

Next, with respect to the timeframe to respond to the garnishment interrogatories served on NVR, the trial court said that "[a] 20-day window is the timeframe required for interrogatory answers."  TCO at 7 (citation omitted).  It observed that the Hespenheides "did not file their petition in that available timeframe and in total, unduly delayed the timing of their petition to intervene for approximately four months after receiving notice." ***Id.*** (citations omitted).  In support, the trial court cited Pennsylvania Rule of Civil Procedure 3144, which provides:

> (a) The plaintiff may, at the time of issuance of the writ or thereafter, file and serve interrogatories directed to the garnishee respecting property of the defendant in the garnishee's possession.  The plaintiff in the interrogatories may require the garnishee to include in the answer, so far as relevant, the names and addresses of persons taking part in any transaction, the specific amount of any debt, the value and location of any property and the nature and amount of consideration given for any transfer of property.
>
> (b) The interrogatories shall contain a notice to answer within twenty days after service.

Pa.R.Civ.P. 3144.

The Hespenheides argue that their petition to intervene should not be considered unduly delayed pursuant to Rule 3144 because negotiations were

---

[12] ***Accord Bogdan v. American Legion Post 153 Home Ass'n***, 257 A.3d 751, 758 (Pa. Super. 2021) ("[T]he trial court erred in concluding that [the petitioners] unduly delayed by failing to petition to intervene earlier as there was simply no reason for [the petitioners] to do so.").

taking place between Tedesco, NVR, FWH, and themselves at that time. They explain that they

> did not receive notice that their sole interests in the [l]ot [s]ale [p]roceeds were at issue until Tedesco served a writ of execution on NVR on October 31, 2022. Upon receiving the writ, NVR, Tedesco, FWH and the Hespenheides began negotiations regarding how to address the payout of the [l]ot [s]ale [p]roceeds, which culminated in the mutually agreed [e]scrow [a]greement dated January 23, 2023.

*Id.* at 25-26. In their reply brief, the Hespenheides further elaborate:

> It is misleading and inaccurate for Tedesco to contend that the Hespenheides' [February 13, 2023 p]etition to [i]ntervene was untimely because it was not filed prior to the deadline for responding to the writ of execution served on NVR. Service of the writ on NVR immediately prompted all parties to begin discussing potential issues regarding ownership of the [l]ot [s]ale [p]roceeds. Tedesco admits that counsel for NVR contacted counsel for both FWH and Tedesco upon receiving the writ of execution and that the parties negotiated for a period of months. [*See* Answer to Petition, 3/3/23, at ¶¶ 34, 35.] Those negotiations included an agreement to allow both NVR and the Hespenheides an extension of time to respond to the [i]nterrogatories … directed to NVR. This understanding is evidenced by the fact that NVR never filed [a]nswers on its own behalf. Rather, the parties were focused on negotiating the [e]scrow [a]greement, the purpose of which was to allow the parties to memorialize and protect their respective alleged rights in the [l]ot [s]ale [p]roceeds by having them deposited into escrow pending the dispute as to attachment of non-judgment debtor assets. Without any real dispute as to the ownership of the [l]ot [s]ale [p]roceeds, there would have been no need for the [e]scrow [a]greement, which was the culmination of the parties' negotiations on that issue.

Hespenheides' Reply Brief at 2-3.

Under the specific circumstances of this case, we agree with the Hespenheides that they did not unduly delay in failing to file their petition for intervention within the 20-day period, and that the trial court abused its

discretion in finding to the contrary. It is evident that negotiations were taking place at that time, which Tedesco itself admitted. *See* Answer to Petition at ¶¶ 34, 35. Further, our review of the record confirms that NVR never filed answers to the interrogatories.

In addition, regarding the fact that the Hespenheides waited to file their petition to intervene until after the execution of the escrow agreement, we again determine that the trial court abused its discretion in finding undue delay on this basis. A review of the escrow agreement shows that the parties to it contemplated that the Hespenheides would file a petition to intervene. *See* Escrow Agreement at ¶ 4 ("FWH and/or the Hespenheides reserve the right to request a court of competent jurisdiction to decide the issue of the ownership of the [l]ot [s]ale [p]roceeds and availability for garnishment of the [l]ot [s]ale [p]roceeds…."); *id.* at ¶ 8 ("This [a]greement does not constitute an admission and/or agreement by the parties as to the ownership of or rights to the [l]ot [s]ale [p]roceeds, or FWH's or the Hespenheides' right to now contest ownership of the [l]ot [s]ale [p]roceeds."); *id.* at ¶ 9(a) ("In the event that a court determines that FWH does not have ownership of the [l]ot [s]ale [p]roceeds that is [*sic*] available for garnishment, the escrowed [l]ot [s]ale [p]roceeds shall be distributed to the Hespenheides."). In fact, the escrow agreement provided a timeframe for when the ownership issue would be presented to a court, and Tedesco does not argue that this time provision was violated. *Id.* at ¶ 4 ("FWH shall provide documentation to Tedesco within ten days of this [a]greement in support of the FWH position on ownership,

including the Lot Purchase Agreement and any amendments thereto, and proceedings to present this issue to a court will be initiated within ten days thereafter."). As such, because the escrow agreement contemplated that further proceedings would take place to resolve the ownership issue, the trial court abused its discretion in finding undue delay on the grounds that the Hespenheides filed their petition after the escrow agreement was entered.[13]

Lastly, to the extent the trial court ascertained that granting intervention after the escrow agreement would cause unnecessary disruption and prejudice to the parties, that determination was an abuse of discretion, given that the escrow agreement specifically anticipated the Hespenheides' litigating the ownership issue, as discussed *supra*. Furthermore, with respect to the trial court's opinion that allowing intervention would unduly prejudice the interests of a party in whose favor the matter has been resolved, we observe that the Hespenheides are not seeking to intervene to contest the underlying breach-of-contract determination or CASPA awards. Rather, they are intervening to contest the issue of who owns the lot sale proceeds — an

---

[13] We also deem these circumstances different than those in *Twp. of Radnor v. Radnor Recreational, LLC*, 859 A.2d 1 (Pa. Cmwlth. 2004), as the escrow agreement here contemplated that the Hespenheides would file a petition to intervene and did not settle the ownership issue. *Cf. id.* at 5-6 (determining that the trial court did not abuse its discretion in denying a petition to intervene where petitioners "unduly delayed the filing of their intervention petition when they sat by while observing matters up to the very point when the [parties] adopted a long-developing settlement agreement[,]" and stating "there can be no question that the grant of the intervention petition at this point, after the parties have essentially resolved their dispute, would be highly prejudicial to the parties").

issue which was not finally resolved in anyone's favor prior to the Hespenheides' petition to intervene.[14]  As such, we see no undue prejudice to Tedesco in allowing the Hespenheides to intervene to litigate the ownership issue.  Thus, we conclude that the trial court abused its discretion in refusing intervention under Rule 2329(3).

## Conclusion

In sum, we conclude that the trial court abused its discretion in denying the Hespenheides' petition to intervene.  Consequently, we reverse the trial court's order and remand for further proceedings so that the ownership issue may be litigated.

Order reversed.  Case remanded.  Jurisdiction relinquished.

---

[14] In reaching its decision, the trial court cited two cases where intervention was denied because the petitioners sought intervention **after** the matter was resolved.  **See In re Estate of Albright**, 545 A.2d 896, 899 (Pa. Super. 1988) ("If [the petitioner] felt its own interests to be jeopardized…, it could have petitioned to intervene at any point prior to the resolution of the exceptions by the court en banc on November 14, 1986.  On that date, the June 10th order was made final and the matter concluded.  [The petitioner's] petition to intervene was filed nearly a month later on December 8th.  … Especially where the party proposing its intervention has had ample notice and opportunity to protect its interests earlier, to allow intervention at such a late date would unduly prejudice the interests of a party in whose favor the matter has been resolved."); **Chairge v. Exeter Borough Zoning Hearing Board**, 616 A.2d 1057 (Pa. Cmwlth. 1992) (denying petition to intervene where the petitioner had ample notice and opportunity to intervene, but took no action until after the entry of the trial court's decree and raised no extraordinary circumstances which would justify granting intervention after entry of the decree).  Here, in contrast, the ownership issue was not resolved before the Hespenheides sought to intervene.  Thus, we consider these cases distinguishable.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>8/28/2025</u>